F. CAMPBELL PEERY and CAROLYN )
PEERY, )
)
     Plaintiffs, )
)
v. )
)    CASE NO. CV106-172
CSB BEHAVIORAL HEALTH SYSTEMS )
and THE MANUFACTURERS LIFE )
INSURANCE COMPANY (U.S.A.), )
)
     Defendants. )
)
_____ )

## O R D E R

Before this Court are cross-motions for summary judgment from all three parties in this case. Plaintiffs have moved for summary judgment on all of their claims, and all of CSB's counterclaims against them. (Doc. 115.) Defendant Community Service Board Behavioral Health Systems ("CSB") has filed a Motion for Partial Summary Judgment. (Doc. 101.) Defendant Manufacturers Life Insurance Company (U.S.A.) ("Manulife") has filed a Motion for Summary Judgment on all claims against it. (Doc. 111.) After careful consideration, Plaintiffs' Motion for Summary Judgment is **DENIED** in its entirety; CSB's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**; and Manulife's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The Community Service Board of East Central Georgia is a state agency established pursuant to O.C.G.A. § 37-2-1 et seq. It provides mental health, mental retardation, and substance abuse services to individuals residing in east central Georgia. CSB[1] is owned and operated by the Community Service Board of East Central Georgia and provides the above-mentioned services.

On September 7, 1999, Plaintiff F. Campbell Peery became the Executive Director of CSB in Augusta, Georgia. For much of his tenure, Mr. Peery was considered to be an admirable employee and received strong performance reviews. (Doc. 118, Attachment Y) (written performance review.)

On or about April 9, 2001, Mr. Peery informed Jim Points, then chairman of the Board, that he was an alcoholic and that he intended to seek treatment. Mr. Points signed a leave request form, authorizing Mr. Peery to take a medical leave of absence. The form stated that the leave was for "stress-related, medical directed" reasons.

Mr. Peery began his approved leave on April 10, 2001. On April 12, the personnel technician in CSB's human resources department sent the forms required for valid FMLA leave to Mr. Peery's residence, after learning of Mr. Peery's intended

---

[1] CSB was formerly known as the Community Mental Health Center.

2

absence.  (Doc. 101, Lowry Aff., Ex. 2.)  It is uncontested that Mr. Peery never returned any of these forms.

CSB contends that, at some point prior to April 30, 2001, the chairman of the Regional Board informed Mr. Points that Mr. Peery had conducted several abrasive or unprofessional conversations with some members of the Regional Board.  (Doc. 101, Points Aff. ¶ 4.)  The chairman informed Mr. Points that these actions were placing a "strain" on the relationship between CSB and the Regional Board.  (Id.)  Ultimately, CSB contends these performance-based concerns led to its decision not to continue Mr. Peery's employment upon his return from rehabilitation.  (Doc. 101, Frazier Aff. ¶ 6.)  Mr. Peery was informed that he did not have a job when he returned.  The next day he removed his files, and may have taken some files that belonged to CSB.  (Doc. 107, Campbell Peery Dep. at 149:2 to :5.)

Meanwhile, several of CSB's top executives and outside business associations were under investigation for a conspiracy to defraud CSB.  See United States v. Williams, No. 05-15499 (11th Cir., Mar. 12, 2007) (unpublished), United States v. Williams, CR104-051 (S.D. Ga., May 26, 2004).

When Mr. Peery was fired, he threatened to sue CSB under the Americans With Disabilities Act, Family Medical Leave Act, and to pursue other claims related to his firing.  In response,

CSB entered into a Settlement Agreement with Mr. Peery that contained both a mutual release of all then-existing claims and a cash payment to Mr. Peery. Of the $224,000 Mr. Peery was to receive under the terms of the Settlement Agreement, he received $59,000 in cash. The balance of the funds were used to purchase a life insurance policy from Defendant Manulife, Policy Number 57504649. The parties hotly contest their respective roles under this policy. In various places throughout the policy, indicia of ownership sometimes point to Mr. Peery, and sometimes to CSB, as the policy's true owner. (See Doc. 1 at 73-78) (copy of the insurance policy.)

Several years later, in 2003, Mr. Peery met with Board Member Nancy Williamson and disclosed to her the existence of the policy and amount of the severance package. When Ms. Williamson learned of the large amount of the severance package, she asked Mr. Peery how he procured such a large settlement. He told Ms. Williamson that, "[CSB was] so stupid . . . [t]hey didn't take my keys . . . . I came back in that night and I took evidence from my office." (Doc. 135, Nancy Williamson Dep. at 169:8 to :17.) In light of the investigations of board members at the time Mr. Peery left, Ms. Williamson understood this statement as an admission that Mr. Peery used fraudulent means to obtain evidence, which he then used to extort a favorable settlement agreement. CSB immediately revoked Ms. Peery's and

Mr. Peery's daughter's status as beneficiaries of the life insurance policy. (Doc. 133, Grigg Dep. at 38:19 to :23.) CSB contends that it also unequivocally informed Mr. Peery that they no longer considered the Settlement Agreement valid. Mr. Peery, through his lawyer, threatened to sue the board on his previously released claims. Ultimately, he did not sue because he believed he was still the owner of the insurance policy, which was the fruit of the Settlement Agreement. (Doc. 152, Attachment K, Campbell Peery Aff. ¶ 6.) Then, almost exactly three full years later, CSB terminated the policy and captured its proceeds. (Doc. 133, Grigg Dep. at 39:23 to 40:1.)

On November 16, 2006, Mr. Peery filed a Charge of Discrimination with the Equal Employment Opportunity Commission. The charge was dismissed on December 4, 2006, as untimely. Also on November 16, 2006, the Peery's filed suit against the two Defendants in this case. Plaintiffs' claims for breach of fiduciary obligations against CSB; civil theft, conversion and misappropriation; and misrepresentation, libel, slander, and damage to reputation, were dismissed by this Court in its July 27, 2007, and August 2, 2007, Orders. (Docs. 78 & 79.)

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (quoting Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's

case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

In addition, on a motion for summary judgment, parties bear the burden of sufficiently informing the Court of the basis and reasons why they believe they are entitled to summary judgment. Celotex, 477 U.S. at 323. As the 11th Circuit has explained, "There is no burden on the district court to distill every potential argument that could be made based upon the material before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995); see also Blue Cross & Blue Shield of Ala. v. Weitz, 913 F.2d 1544, 1550 (11th

Cir. 1990) (explaining why allowing parties to make unsubstantiated requests for summary judgment would render the summary judgment process futile and incorrectly burden district courts). Indeed, "a district court judge is neither required nor permitted to become counsel for any party." Baker v. Norman, 651 F.2d 1107, 1129 n.26 (5th Cir. 1981).[2]

**B.  Plaintiffs' First Claim: Breach of Contract Against CSB**

In Count One, Plaintiffs allege that CSB breached the Settlement Agreement by failing to pay Mr. Peery the agreed upon amount of $224,000. Plaintiffs move for summary judgment, contending that all elements of breach of contract have been established. Defendant CSB moves for partial summary judgment with respect to Plaintiffs' breach of contract claim, as well.

**1.  Fraud in Procuring the Contract**

"Fraud renders contracts voidable at the election of the injured party." O.C.G.A. § 13-5-5. Defendants allege that Mr. Peery procured the Settlement Agreement through fraud and, because a material issue of fact remains with respect to the fraud summary judgment cannot be entered. (Doc. 102 at 3-19.) Plaintiffs concede that they are not entitled to summary judgment if CSB's fraud defense is valid. However, they respond

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

that CSB's fraud defense is meritless as a matter of law, and therefore summary judgment is proper on the breach of contract claim. (Doc. 157 at 1-20.) Since this Court finds a dispute of material fact with respect to the fraud allegations, it will not consider Plaintiffs' arguments with respect to breach of contract.

To prove fraud in Georgia, "slight circumstances may be sufficient to carry conviction of its existence." O.C.G.A. § 23-2-57. For that reason, "except in plain and indisputable cases, scienter in actions based on fraud is an issue of fact for jury determination." Brown v. Mann, 237 Ga. App. 247, 249, 517 S.E.2d 922, 924 (1999). The Eleventh Circuit has also recognized the difficulties of proving fraud. Wilson v. S & L Acquisition Co., L.P., 940 F.2d 1429, 1440 (11th Cir. 1991).

Here, it is not "plain and indisputable" that Mr. Peery procured the Settlement Agreement without committing fraud.[3] At the time Mr. Peery was fired, several officers of CSB were under criminal investigation for conspiracy, some of whom were later convicted. See United States v. Williams, No. 05-15499 (11th Cir., Mar. 12, 2007) (unpublished), United States v. Williams,

---

[3] CSB has provided extensive affidavit and deposition testimony showing facts which suggest that Mr. Peery may have committed numerous acts of fraud or conspired to do so. The following is sufficient on its own to show a material dispute of fact, but is not the full extent of the facts in support of fraud. (See Doc. 142 at 3-19.)

CR104-051 (S.D. Ga., May 26, 2004). In light of these criminal matters, there is evidence on which a jury could conclude that Mr. Peery used fraud to force the board members under investigation to provide him with a generous settlement agreement. For example, Mr. Peery's later explanation of his sizeable severance package to board member Nancy Williamson: "[CSB was] so stupid . . . [t]hey didn't take my keys . . . . I came back in that night and I took evidence from my office." (Doc. 135, Nancy Williamson Dep. at 169:8 to :17.) Ms. Williamson's statement is strengthened by Mr. Peery's admission that he was in possession of CSB files. When asked, "as far as you know there was not a single document that you took that was the property of the Community Service Board," Mr. Peery responded, "I did not say that." (Doc. 107, Campbell Peery Dep. at 149:2 to :5.)

Moreover, CSB asserts that not only did Mr. Peery make fraudulent statements of his own, but also that he used the documents to form a conspiracy to procure the Settlement Agreement.[4] CSB points to numerous pieces of evidence tending to show a conspiracy to commit fraud between Mr. Peery and several other board members. (See, e.g., Doc. 135, Nancy Williamson Dep. at 214:25 to 225:14; Doc. 128, Usury Dep. at 33:10 to :16;

---

[4] In Georgia a co-conspirator to fraud is liable for the actions of his conspirators. Wilson v. Appalachian Oak Flooring & Hardware Co., 220 Ga. 599, 609, 140 S.E.2d 830, 836 (1965).

Doc. 142 at 9-19.) Plaintiffs respond to this with numerous factual allegations of their own. However, they fail to cite any authority entitling them to summary judgment or an analogous case where summary judgment was granted. (Doc. 157 at 1-12.)[5] While Plaintiffs have many facts in opposition to CSB's factual allegations, CSB asserts plenty of facts in support of their contention as well. In fact, the volume of facts relied on by both sides simply validates the conclusion that this claim is replete with factual disputes. Because factual disputes are resolved by juries, it would be inappropriate for this Court to rule on the fraud issue.[6] The fraud issue is a question for the jury.

Alternatively, Plaintiffs contend that the statue of limitations bars CSB's fraud defense. Plaintiffs' contention is erroneous. The statue of limitations "is an affirmative defense . . . which asserts a bar to recovery." Dept. of Human Res. v. Nation, 265 Ga. App. 434, 438, 594 S.E.2d 383, 387 (2004). The

---

[5] Alternatively, CSB has pointed out that while Mr. Peery signed the Settlement Agreement promising to pay him in a lump sum, he soon thereafter negotiated a different and more personally advantageous form of the payment. This suggests he engaged in fraud by never intending to honor the actual terms of the signed Settlement Agreement. (Doc. 107, Campbell Peery Dep. at 178:20 to 179:11.)

[6] Among other factual arguments, Plaintiffs assert that the lead fraud investigator in the criminal case did not find Mr. Peery to be guilty of fraud. (Doc. 157 at 9.) Regardless of the admissibility of this evidence, the lead prosecutor's opinion is not dispositive evidence that Mr. Peery did not commit fraud.

bar of the statute of limitations is "a privilege to the defendant." Stephenson v. Roper Pump Co., 261 Ga. App. 131, 133, 581 S.E.2d 741, 742 (2003) (emphasis added). As these cases make clear, statutes of limitations bar claims, not defenses. Here, fraud is asserted as a defense and not as a claim. Therefore CSB's defense of fraud cannot be barred by the statute of limitations.

As a result, there is a material issue of fact as to whether the contract was procured by fraud. Accordingly, Plaintiffs' Motion for Summary Judgment on their breach of contract claim against CSB is **DENIED**.

## 2. CSB's Motion for Summary Judgment on Carloyn Peery's Breach of Contract Claim

CSB contends that Carolyn Peery lacks standing to assert a claim for breach of contract, as she was neither a party nor a third-party beneficiary of the Settlement Agreement. (Doc. 102 at 15.) Plaintiffs reply that Ms. Peery is Mr. Peery's "heir" and, therefore, is a beneficiary to the Settlement Agreement.

Plaintiffs assert that Carolyn Peery is F. Campbell Peery's "heir," but fail to cite any authority which would suggest that a living person can have heirs. In fact, Georgia law is quite clear on this point: "No one can be the heir of a living person . . . ." Rowen v. Estate of Hughley, 272 Ga. App. 55, 60, 611 S.E.2d 735, 740 (2005). Accordingly, CSB's Motion for Summary

Judgment is **GRANTED** with respect to Ms. Peery's claim for breach of the Settlement Agreement and Ms. Peery's claim is **DISMISSED**.

### 3. CSB's Other Arguments for Partial Summary Judgment as to the breach of contract claim

CSB has raised several additional arguments that it believes entitles it to partial summary judgment on Mr., and not Ms., Peery's breach of contract claim. For the reasons below, the partial judgment with respect to Mr. Peery is **DENIED** in part, and **GRANTED** in part.[7]

#### a. Summary Judgment Based on the Manulife Policy.

CSB argues that Plaintiffs had no rights under the insurance policy, and therefore breach of contract claims based on the insurance policy are baseless. These assertions are premised on CSB's ownership of the policy. However, ownership of the policy is ambiguous. See infra Part C.1.a.[8] Therefore, CSB's Motion for Partial Summary Judgment with respect to breach

---

[7] CSB has made a narrow argument that ¶ 29 of the complaint is meritless as a matter of law. However, in reply to Plaintiffs' Response to CSB's Motion for Summary Judgment, CSB states that "the relevance of this argument to the instant motion is unclear." (Doc. 156 at 8.) If CSB cannot tell this Court the relevance of its argument to its Motion for Partial Summary Judgment; it is not the Court's job to discern it. See Resolution Trust, 43 F.3d at 599. Accordingly, CSB's Motion for Summary Judgment with respect to ¶ 29 of Plaintiffs' Complaint is **DENIED**.

[8] This Court addresses the ambiguities in the policy under the breach of contract claim against Manulife for the sake of clarity, as fewer arguments have been raised under that claim.

of contract claims arising out of the Manulife insurance policy is **DENIED**.

### b.   CSB's Sovereign Immunity on Oral Contracts

All parties agree that the State of Georgia has waived its sovereign immunity with respect to written contracts; and that Georgia retains its sovereign immunity with respect to oral contracts.   Here, CSB asserts that Mr. Peery's subsequent agreement[9] with CSB's attorney, Mr. David, concerning the manner of payment under the Settlement Agreement, was a separate oral contract.   Therefore, CSB contends, sovereign immunity protects CSB with respect to that oral agreement regardless of the validity of the Settlement Agreement.   Plaintiffs respond that when CSB Attorney David detailed the agreement to an employee of Manulife in a letter, that letter "became one of the relevant contractual documents in the insurance contractual agreement with Manulife."[10]

---

[9] CSB contends no such agreement was reached in the first place.
[10] The Court is aware that Plaintiffs have a second response to this argument.   Although Plaintiffs have failed to clearly state their argument, this Court's best guess is that they are asserting that because David was an agent (or apparent agent) of the board, whose authorization to act was in writing, any agreements he may have made would be considered written.   CSB has responded to this, in part, by asserting that Mr. David was actively defrauding CSB at the time he was working with Mr. Peery, and therefore could not be CSB's agent.   (Doc. 161 at 2.) Here, Plaintiffs have failed to inform the Court of their legal reasoning, supporting law, and necessary facts to establish this claim.   First, Plaintiffs have provided neither a legal explanation as to how Mr. David could be an agent of the board

14

Once again Plaintiffs have not provided this Court with any legal authority to support this argument. (Doc. 148 at 9.) Likewise, and perhaps because Plaintiffs' argument is devoid of authority, CSB has not provided a response as to why the document is not a part of the insurance contract. (Doc. 102 at 14-15.) Instead, CSB contends that the agreement was a verbal side agreement, relying solely on Mr. Peery's personal characterizations. (Id.) The CSB has failed to explain why the later promise is not a modification of the earlier written Settlement Agreement, or why the letter is not an incorporated document of the insurance contract. (Id.) "There is no burden on the district court to distill every potential argument that could be made based upon the material before it on summary

---

while he was actively defrauding the board as CSB contends; nor, in the alternative, do they provided any evidence to suggest that Mr. David was a faithful agent of CSB. (Doc. 148 at 9.) Plaintiffs' only explanation as to their agency theory appears in their own Motion for Summary Judgment and sheds no light on Mr. David's alleged fraudulent actions or how his actions would affect his agency. (Doc. 116 at 12-13.) Second, even if this Court were to craft Plaintiffs' legal argument with respect to agency, Plaintiffs still would not have provided this Court with any legal argument as to why oral contracts entered into by an agent should be considered as written contracts for the purposes of determining Georgia's sovereign immunity rights. (Id.) Furthermore, this Court is aware of no such legal argument. "There is no burden on the district court to distill every potential argument that could be made based upon the material before it on summary judgment." Resolution Trust, 43 F.3d at 599. Accordingly, we do not craft Plaintiffs' legal arguments here. To the extent Plaintiffs contend that CSB may not assert sovereign immunity as a defense to Mr. David's oral promises, CSB's Motion for Summary Judgment is **GRANTED**.

judgment." <u>Resolution Trust</u>, 43 F.3d at 599. This Court will not craft a legal explanation for either side as to the proper characterization of this potential agreement.

However, it is sufficient to say that insurance contracts are written contracts, and Georgia has waived sovereign immunity with respect to these contracts. O.C.G.A. § 50-21-1. Therefore, to the extent CSB's Motion for Partial Summary Judgment attempts to assert sovereign immunity to any obligations it may have had under the written insurance contract, CSB's Motion for Summary Judgment is **DENIED**.

### 4. Conclusion

After careful consideration and for the reasons above, this Court makes the following rulings with respect to Plaintiffs' first claim—breach of contract against CSB. Plaintiffs' Motion for Summary Judgment is **DENIED**. CSB's Motion for Partial Summary Judgment is **DENIED** with respect to its motions on ¶ 29 of Plaintiffs' Complaint; on its lack of obligations to the Peery's under the Manulife Insurance policy; and on its ability to assert sovereign immunity with respect to any rights it may owe the Peery's under the insurance policy. CSB's Motion for Partial Summary Judgment is **GRANTED** with respect to any rights Plaintiffs' claim to be owed under verbal or oral side agreements and Carolyn Peery's lack of standing to assert breach of contract claim. Accordingly, Ms. Peery's breach of contract

claim against CSB is **DISMISSED**, and to the extent Plaintiffs rely on an oral side agreement as the breached contract, Plaintiffs' first claim is **DISMISSED**.

## C.   <u>Plaintiffs' Second Claim: Breach of Contract Against</u> <u>Manulife</u>

In Count Two, Plaintiffs allege that Defendant Manulife breached the insurance contract by liquidating the policy and forwarding the funds to CSB, violating Plaintiffs' rights under the insurance contract.   (Doc. 1 ¶¶ 39-40.)   Defendant Manulife moves for summary judgment, asking this Court to dismiss Plaintiffs' breach of contract claim for lack of standing. Manulife contends that Plaintiff F. Campbell Peery is merely an insured life and that Plaintiff Carolyn Peery is merely a former third-party beneficiary.   (Doc. 112 at 2-5.)    Plaintiffs argue that they have standing because the contract is ambiguous and because parol evidence demonstrates that F. Campbell Peery is the "de facto" policy owner (or in the alternative a third-party beneficiary) and that Carolyn Peery is a third-party beneficiary under the policy.   (See Doc. 1 ¶ 34; Doc. 116 at 24-25.)

### 1.   <u>Parol Evidence</u>

The parties disagree about whether or not parol evidence may be introduced to determine Mr. and Ms. Peery's rights under the contract.   Accordingly, the first issue before the Court is

whether parol evidence is admissible to show the intent of the parties in entering the insurance contract.

In interpreting an insurance contract, a court may look to parol evidence only if there is ambiguity in the contract. Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co., 254 F.3d 987, 1003 (11th Cir. 2001). Questions of contract interpretation, "including the determination of whether a contract is ambiguous in order to permit extrinsic evidence of intent," are questions of law. In re Stratford of Tex., Inc., 635 F.2d 365, 368 (5th Cir. 1981); see also Bragg v. Bill Heard Chevrolet, Inc., 374 F.3d 1060, 1064 (11th Cir. 2004). However, questions of fact may arise "when an ambiguous contract term forces the court to turn to extrinsic evidence of the parties' intent, such as precontract negotiations, to interpret the disputed term." Lawyers Title Ins. Corp. v. JDC (Am.) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995).

"Ambiguity" in an insurance policy occurs "if [the policy] is susceptible to two or more reasonable interpretations that can fairly be made.'" Essex Ins. Co. v. Zota, 466 F.3d 981, 986-87 (11th Cir. 2006) (quoting Cont'l Cas. Co. v. Wendt, 205 F.3d 1258, 1261 (11th Cir. 2000)). In making a determination regarding a contract's alleged ambiguity, a court must look only to the contract and its incorporated addendums. See Vencor Hosps. v. Blue Cross Blue Shield of R.I., 284 F.3d 1174, 1179

(11th Cir. 2002). Parol evidence may be used only to explain an ambiguity, not to create one. Id.

### a. Ambiguities as to Policy's Owner

Defendant Manulife contends that the insurance contract is unambiguous on its face and that extrinsic evidence is inadmissible to show the parties' intents. (Doc. 112 at 3.) In support of its argument that CSB is the unambiguous owner, Manulife relies, throughout its various filings, upon the following provisions of the insurance contract: (1) a merger clause in the insurance contract providing that "the policy, application, supplementary benefits and any endorsement form [the] whole contract" and (2) provisions in the Application and in the policy itself listing Defendant CSB as the sole owner of the policy. (Doc. 159 at 2-4.)

Plaintiffs contend that the policy is ambiguous with respect to ownership. (Doc. 150 at 17-18.) As evidence of this ambiguity, Plaintiffs point to several facts. First, although the first page of the incorporated insurance application lists the "Community Service Board of E. Central GA" as the trust owner, Attorney David's address and business telephone number are listed as the owner's. (See Doc. 1 at 73) (insurance policy.) Second, Plaintiff F. Campbell Peery's home phone number is provided as that of the owner. (Id.) Third, on the second page of the incorporated document, "Policy Details," the

line for the signature of the owner is blank. (Id. at 78.) According to this form, the line should only be filled in "if Owner is other than Proposed Life Insured." (Doc. 118, Ex. S.) Finally, on the fifth page of the policy "F. Campbell Peery" is the only name designated as "the names of all individuals authorized to transact business on behalf of the entity." (Doc. 150 at 5.)

These facts show ambiguity as to who owns the policy that cannot be resolved without the aid of a jury. As both parties' motions for summary judgment on the breach of contract issue necessarily rest on ownership of the contract, a question of material fact remains as to each.[11] Accordingly, Defendant Manulife's Motion for Summary Judgment on Plaintiff F. Campbell Peery's claim for breach of contract is **DENIED**, as the Court cannot determine at this stage whether Mr. Peery is the owner of the insurance policy. For the same reason, Plaintiffs' Motion for Summary Judgment is **DENIED**.

### b.   Ambiguities as to the Policy's Beneficiary

Manulife contends that Ms. Peery lacks standing to bring this claim. In support of this proposition, Manulife raises two

---

[11] Manulife also asserts that the insurance contract is void for lack of an insurable interest. (Doc. 112 at 7.) Manulife necessarily concedes that for this argument to be valid, CSB must be the owner of the policy. (Id. at 7-8.) Accordingly, the Court will not address this argument as it finds ownership of the policy to be a question for the jury.

arguments. These arguments are unavailing because both turn on the assumption that CSB, and not Mr. Peery, is the sole owner of the policy.

Manulife first asserts that Ms. Peery has no interest in this litigation because any interest she had in the policy was properly revoked. (Doc. 112 at 3.) Yet, if Mr. Peery is the true owner of the policy, CSB is incapable of making an effective revocation. See Fuller v. Harrison, 217 Ga. App. 125, 456 S.E.2d 684 (1995); 16 Ga. Jur. Insurance § 22:5 (2008) ("[A]ny change of beneficiary requested by one other than the owner is ineffective . . . ."). As such, if Mr. Peery is the policy owner, then the revocation is ineffective, and Ms. Peery's third party rights under the policy remain.

Manulife then asserts that CSB, as policy owner, and Manulife, as policy issuer, were the only two parties to the contract, and, because CSB did not intend the Peery's to benefit, the Peery's have no enforceable rights under the contract. (Doc. 112 at 3-5.) However, if Mr. Peery is the true owner of the policy, CSB's intentions as to the Peery's status would be irrelevant.

As both arguments turn on Mr. Peery's ownership, a question which cannot be resolved without the aid of the jury, the Court cannot yet determine if Ms. Peery has standing. Accordingly,

Manulife's Motion for Summary Judgment is **DENIED** as to Plaintiff Carolyn Peery's claim for breach of contract.

## D.  Plaintiffs' Third Claim: Estoppel and Detrimental Reliance

### 1.  With Respect to CSB

In Count Three of the Complaint, Plaintiffs allege Defendant CSB should be estopped and enjoined from breaching its obligations under the May 24, 2001, Settlement Agreement because Mr. Peery detrimentally relied on CSB's representations that it would comply with the policy.  Defendant CSB has asserted that it is entitled to sovereign immunity on this claim.  Because this Court finds CSB either has sovereign immunity, or Plaintiffs have an adequate remedy at law, parties arguments on the merits need not be considered.

In its August 2, 2007 Order, this Court decided that Defendant CSB is a state agency and, therefore, entitled to state-conferred sovereign immunity.[12]  (Doc. 79.)  Accordingly,

---

[12]  Plaintiffs now argue that in light of 2006 state legislation, O.C.G.A. § 37-2-6(a), Community Service Boards are no longer entitled to state-conferred sovereign immunity.  However, this statute does not clearly state that Community Service Boards are no longer immune.  To the contrary, the statute explicitly refers to these boards as "instrumentalities of the state." O.C.G.A. § 37-2-6(a).  Moreover, Plaintiffs do not direct this Court's attention to any state case law suggesting that state courts have changed their position in light of this amendment. Accordingly, this Court declines to presume that state courts will overrule themselves in light of this amendment, which is now approximately two years old.

22

the inquiry here is whether or not state-conferred sovereign immunity attaches.

Georgia has not waived its sovereign immunity with respect to state law equity claims. Dollar v. Olmstead, 232 Ga. App. 520, 522, 502 S.E.2d 472, 474 (1998).[13] Therefore, unless Plaintiffs can show an exception to this rule, CSB is entitled to sovereign immunity from suit for detrimental reliance and estoppel.[14]

There is an exception to state-conferred sovereign immunity in Georgia where "a party seeks injunctive relief against the state or a public official acting outside of the scope of lawful authority." I.B.M. Corp. v. Evans, 265 Ga. 215, 216, 453 S.E.2d 706, 708 (1995) (emphasis added). Plaintiffs assert this exception, saying that it was illegal for CSB to violate the

_____

[13] Plaintiffs assert that equitable claims for relief are not barred by the Eleventh Amendment, and direct this Court's attention to Collier v. Clayton County C.S.B., 236 F. Supp. 2d 1345 (N.D. Ga. 2002). However, CSB is not asserting Eleventh Amendment sovereign immunity, but rather state-conferred sovereign immunity. To the extent that Plaintiffs are asserting state law equity claims, as opposed to claims based on a federal right, CSB can raise of defense of state-conferred sovereign immunity under the Georgia Constitution regardless of any independent immunity the Eleventh Amendment might confer. Johnson v. Ogeechee Behavioral Health Servs., 479 F. Supp. 2d 1357, 1363 (S.D. Ga. 2007). Therefore, Collier is irrelevant to the question of whether state-conferred sovereign immunity independently bars Plaintiffs' state law claims.

[14] This Court notes that under Georgia law there is no independent claim for estoppel. Marshall v. King & Morgenstern, 272 Ga. App. 515, 520, 613 S.E.2d 7, 11 (2005) ("estoppel is not a cause of action"). Detrimental reliance and estoppel must be asserted together as one claim in this case.

terms of the life insurance policy and the Settlement Agreement by revoking the beneficiaries and taking the money out of the policy. (Doc. 148 at 8.) In short, Plaintiffs assert CSB's breach of contract is what entitles them to equitable relief under the I.B.M. Corp. exception.

The problem with this contention is that assuming, arguendo, Plaintiffs are correct that CSB is not entitled to sovereign immunity because it breached a contract by confiscating the money in the policy, Plaintiffs have an adequate remedy at law. Equity will not intervene where there is an adequate remedy at law. Total Supply Inc. v. Prigden, 267 Ga. App. 125, 127, 598 S.E.2d 805, 808 (2004); see also Mitsubishi Intern. Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1518 (11th Cir. 1994).

Here, Plaintiffs assert that CSB's breach in failing to pay Mr. Peery the full amount under the Settlement Agreement entitles them to equitable relief. (Doc. 148 at 8.) Yet, if CSB is in breach of contract for failing to fully pay Mr. Peery, then Mr. Peery clearly has an adequate remedy at law—recovery of the money CSB promised to pay Mr. Peery. Therefore, even if Plaintiffs could use CSB's breach to fall under the illegality exception to sovereign immunity, equity would not intervene because they would have an adequate remedy at law.

Accordingly, Defendant CSB's Motion for Summary Judgment with respect to the estoppel and detrimental reliance claim is **GRANTED**; Plaintiffs' Motion for Summary Judgment on the same is **DENIED**; and the estoppel and detrimental reliance claim is **DISMISSED**.

### 2.    With Respect to Manulife

In Count Three of the Complaint, Plaintiffs allege that Defendant Manulife should be estopped from canceling the life insurance policy because Mr. Peery relied, to his detriment, on Manulife's promises that the policy would be maintained for the sole benefit of Mr. and Ms. Peery.    Plaintiffs and Defendant Manulife moved for summary judgment on this claim.

The elements of a claim for promissory estoppel are: (1) the defendant made a promise to the plaintiff; (2) the defendant should have known that the plaintiff would rely on the promise; (3) the plaintiff did in fact rely on the promise, to his detriment; and (4) injustice can only be avoided by enforcement of the promise. Mitchell v. Ga. Dept. of Comm. Health, 281 Ga. App. 174, 179, 635 S.E.2d 798, 804 (2006).

In its Motion for Summary Judgment, Manulife argues that the only promises it made were the terms of the insurance policy that it issued.    (Doc. 112 at 5.)    It claims that any promises therein were made to CSB, which it contends was the unambiguous owner of the policy, and to Carolyn Peery, but only until she

25

was validly revoked as a beneficiary. (Id.) Manulife, therefore, argues that there was no irrevocable promise on which Plaintiffs could reasonably rely. Thus, Plaintiffs cannot satisfy two of the four elements set forth in Mitchell. (Id. at 6.) In response, Plaintiffs contend that the issue of to whom promises were made has not been determined and that summary judgment is therefore inappropriate. (Doc. 157 at 1-6.)

As the Court explained above, a jury question exists with respect to the ownership of the policy. See supra Part C.1.a. As Manulife admits, it made promises to the owner of the policy. (Doc. 112 at 5.) Therefore, the question of promissory estoppel with respect to Mr. Peery cannot be resolved until the issue of ownership is resolved. Accordingly, Manulife's Motion for Summary Judgment with respect to Mr. Peery's promissory estoppel claim is **DENIED** and Mr. Peery's Motion for Summary Judgment on this claim is also **DENIED**.

Similarly, because a jury question exists with respect to Ms. Peery's interest in the policy, the Court cannot resolve her promissory estoppel claim. Manulife's argument that Ms. Peery was made no promises after her interest was revoked is insufficient to award Manulife summary judgment because this Court cannot determine the validity of that revocation. Accordingly, Defendant's Motion for Summary Judgment with

respect to Ms. Peery is **DENIED**, and Ms. Peery's motion for summary judgment is **DENIED**.

E. **Plaintiffs' Fourth Claim: Breach of Fiduciary Duty Against Manulife**[15]

In Count Four of the Complaint, Plaintiffs allege that Defendant Manulife breached its fiduciary duty to Plaintiffs when it failed to maintain the life insurance policy for the sole, exclusive and irrevocable benefit of Mr. and Ms. Peery. Plaintiffs allege that Defendant Manulife's breach violated O.C.G.A. § 23-2-58. Both Plaintiffs and Defendant Manulife moved for summary judgment on this claim.

Defendant Manulife moved for summary judgment on Plaintiffs' claim for breach of fiduciary duty, arguing that Georgia law does not provide for a fiduciary relationship between an insurer and its insured. Manulife contends that it owed no fiduciary duty to Mr. Peery, an insured, or to Ms. Peery, a beneficiary. Plaintiffs have not addressed this argument, despite filing a general response to Manulife's Motion for Summary Judgment. (Doc. 150.)

Under Georgia law, "[a] fiduciary relationship does not exist between an insurer and its insured." Clark v. Byrd, 254 Ga. App. 826, 827, 564 S.E.2d 742, 744 (2002). This is

---

[15] Plaintiffs' claim four with respect to CSB is not addressed because it has already been dismissed. (Doc. 79.)

generally true even when the owner of the policy is the same as the insured. See id., Walsh v. Campbell, 130 Ga. App. 194, 198-99, 202 S.E.2d. 657, 661 (1973). Nor does a life insurance company owe a fiduciary duty to the intended beneficiary of an insurance contract. Am. Gen. Life & Acc. Ins. Co. v. Ward, 509 F. Supp. 2d 1324, 1331 (N.D. Ga. 2007). Moreover, Plaintiffs have not responded to Manulife's arguments, and in such a case Federal Rule of Civil Procedure 56(e)(2) provides that:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must . . . set out specific facts showing a genuine issue for trial. If opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

(emphasis added).

Plaintiffs have not opposed Manulife's Motion for Summary Judgment on this issue. In their response to Manulife, Plaintiffs merely assert that Mr. Peery is the owner of the policy. (Doc. 150 at 5.) However, even if Mr. Peery was both the owner and insured under the policy, he would still not be owed a fiduciary duty under Georgia law.[16] Therefore, pursuant to Federal Rule of Civil Procedure 56(e)(2), Manulife's Motion for Summary Judgment is **GRANTED** on this issue. Plaintiffs' Motion for Summary Judgment on this issue is **DENIED**, and their

---

[16] If some other basis for opposing this summary judgment motion exists, Plaintiffs failed to assert it.

claims against Manulife for breach of fiduciary duty are **DISMISSED**.

## F.  Plaintiffs' Sixth Claim: Unjust Enrichment[17]

### 1.  With Respect to CSB

For the reasons stated above with respect to state law equity claims, this Court finds that CSB either has immunity to this claim, or that the conduct alleged to have abrogated CSB's immunity, if true, would leave Plaintiffs with an adequate remedy at law. See supra Part D.1.

Accordingly, Defendant CSB's Motion for Summary Judgment with respect to the unjust enrichment claim is **GRANTED**; Plaintiffs' Motion for Summary Judgment on the same is **DENIED**; the unjust enrichment claim is **DISMISSED**.

### 2.  With Respect to Manulife

In Count Six of the Complaint, Plaintiffs allege that Defendant Manulife should be estopped from canceling the life insurance policy, or should be assessed damages. However, the basis for this claim is not clear. Plaintiffs' argument appears to be that Manulife would be unjustly enriched if Mr. Peery were to die before Plaintiffs could force reinstatement of the policy, excusing payment of the face value of the policy to the

---

[17] Plaintiffs' claim five is not addressed because it has already been dismissed. (Doc. 79.)

original beneficiaries. Both Plaintiffs and Defendant Manulife moved for summary judgment on this claim.

Manulife argues that Plaintiffs' claim is unripe because Manulife has not yet been enriched in any way. (Doc. 112 at 7.) Plaintiffs concede that unjust enrichment has not occurred and that their claim is unripe, but believe Mr. Peery's poor health remedies this problem. (Doc. 150 at 16.)

Plaintiffs' contention is without merit. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed, may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998). Here, there are multiple such contingent future events. First, this claim requires Mr. Peery to die before the end of this litigation—an event that may not occur at all. Second, this hypothetical claim relies on the fact that Plaintiffs' designated beneficiaries may be entitled to the face value of the policy on the basis of one of Plaintiffs' other claims.[18] For this to be true, Mr. Peery must first prevail on one of his other claims, another future event which may not occur at all.[19]

---

[18] Surely Plaintiffs, who concede the claim is not ripe, are not asserting that their unjust enrichment claim, in and of itself, entitles the beneficiaries to money.

[19] Moreover, this Court notes that if Mr. Peery does prevail on one of his other claims, showing his designated beneficiaries are entitled to the face value of the policy, his death would not stop his beneficiaries from receiving the money he is awarded.

Even if Mr. Peery dies prior to the completion of this litigation, it is not clear that unjust enrichment will occur because his estate could pursue his surviving claims against Defendants.[20] While this Court is sympathetic to Mr. Peery's health issues, there is simply no way this claim can be considered ripe regardless of Mr. Peery's current health.

Accordingly, Manulife's Motion for Summary Judgment is **GRANTED** with respect to Plaintiffs' claim for unjust enrichment. Plaintiffs' Motion for Summary Judgment on this issue is **DENIED**, and their claim against Manulife for unjust enrichment is **DISMISSED**.

## G.    Plaintiffs' Eighth Claim: § 1983[21]

In Count Eight of its complaint, Plaintiffs allege a violation of 42 U.S.C. § 1983, and ask for attorney's fees under 42 U.S.C. § 1988. Both Plaintiffs and Defendant CSB have moved for Summary Judgment on this claim. Because this Court finds it

---

[20] This Court notes, but does not decide, that many of Plaintiffs' claims may well survive his death, which would undermine his argument for including a claim for unjust enrichment. See O.C.G.A. § 9-2-41 ("No action for tort shall abate by the death of either party, where the wrongdoer received any benefit of the tort complained of . . . ."), Brogdon ex. rel. Cline v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1335 (N.D. Ga. 2000) (breach of contract claims for damages survive the death of a plaintiff), Elliot v. Cline, 184 Ga. 393, 395, 191 S.E. 372, 374 (1937) (breach of contract claims survive the death of the plaintiff to the extent they seek damages and not injunctive relief).
[21] Plaintiffs' claim seven is not addressed because it has already been dismissed. (Doc. 79.)

dispositive that CSB is not a person under the meaning of 42 U.S.C. § 1983, the parties other contentions will not be addressed.

In its Motion for Partial Summary Judgment, CSB argues that Plaintiffs' § 1983 claim fails because CSB is not a "person" as defined by that statute. In response, Plaintiffs contend that case law exists to support suit under § 1983 and that "the real basis for applying § 1983 to a community service board is that such an entity, under Georgia law, is nothing more than a group of individuals, or 'persons.'"[22] (Doc. 148 at 16.)

In order to bring a successful claim for violation of § 1983, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001) (emphasis added). As the Supreme Court has explained, states, state agencies, and state officials acting in their official capacities are not "persons" under § 1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Will v. Mich. St. Dept. of Police, 491 U.S. 58, 65-71 (1989).

In this case, Plaintiffs have acknowledged that CSB is a state agency. Moreover, even if they had not, the Supreme Court

---

[22] Plaintiffs have already conceded that CSB is "a state agency created under the auspices of O.C.G.A. § 37-2-1 et seq." (Doc. 1 ¶ 3.)

of Georgia has already decided that all community service boards are state agencies in spite of potentially ambiguous language in the Official Code of Georgia. <u>Youngblood v. Gwinnett Rockdale Newton Cmty. Serv. Bd.</u>, 273 Ga. 715, 716, 545 S.E.2d 875, 876-77 (2001). Because CSB is a state agency, it is not a "person" under § 1983 and, therefore, Plaintiffs cannot maintain a § 1983 action against it.[23]

Accordingly, Plaintiffs' Motion for Summary Judgment on the § 1983 claim is **DENIED**. CSB's Motion for Summary Judgment is **GRANTED** as to Plaintiffs' § 1983 claim. This claim is **DISMISSED**.

Additionally, because Plaintiffs cannot make out a § 1983 claim, they cannot make out a claim for attorney's fees under 42 U.S.C. § 1988, which would require a successful § 1983 claim. Therefore, Plaintiffs' Motion for Summary Judgment on the § 1988

---

[23] In their response to CSB's Motion for Summary Judgment on this claim, Plaintiffs have asserted that the following cases stand for the proposition that community service boards are persons under § 1983: <u>Collier v. Clayton County Cmty. Serv. Bd.</u>, 236 F. Supp. 2d 1345 (N.D. Ga. 2002) and <u>Faucher v. Rodziewicz</u>, 891 F.2d 864 (11th Cir. 1990). The problem with Plaintiffs' assertion is that these cases are concerned with Eleventh Amendment immunity, not the meaning of the word "person" under § 1983. These cases held that CSBs and their members were not immune from suit under § 1983, but the issue of whether or not CSB was a person was never raised in these cases because Plaintiffs there properly sued not only the state agency but also its <u>individual members</u>, fulfilling the requirement of a suit against a person under § 1983. In fact, in <u>Faucher</u> it does not even appear that a CSB is a named defendant, only an executive director named in his official capacity. See <u>Faucher</u>, 891 F.2d 864.

claim is **DENIED**. CSB's Motion for Summary Judgment is **GRANTED** as to Plaintiffs' § 1988 claim. This claim is **DISMISSED**.

## H. <u>Plaintiffs' Ninth Claim: Family and Medical Leave Act</u>

In Count Nine of their Complaint, Plaintiffs allege that CSB violated the Family and Medical Leave Act of 1993 ("FMLA"), 28 U.S.C. §§ 2601 et seq., when it terminated F. Campbell Peery's employment while he was on approved medical leave. (Doc. 1 at 27-29.) Plaintiffs and Defendant CSB have both moved for summary judgment with respect to this claim. Mr. Peery's failure to file his paperwork in a timely manner to establish eligibility for FMLA leave is dispositive, so Plaintiffs' and Defendant's other arguments are not addressed.

### 1. <u>Mr. Peery's Failure to Comply with the Requirements for Taking FMLA Leave</u>

CSB argues that Mr. Peery may not bring an FMLA action because he failed to complete the necessary paperwork, either in time or at all, to entitle him to FMLA leave from his position at CSB. Since he did not complete his paperwork, CSB asserts he cannot establish a prima facie case for violation of the FMLA. (Doc. 102 at 24-25.)

In order to make a prima facia FMLA case the plaintiff must show, among other things, that he "availed himself of a protected right." <u>Cash v. Smith</u>, 231 F.3d 1301, 1307 (11th Cir. 2000). Where a plaintiff fails to complete paperwork required

for FMLA leave, he cannot meet the above element of a prima facie case and summary judgment is appropriate. Id. Plaintiffs do not contend that Mr. Peery completed the necessary paperwork; rather Plaintiffs contend that equitable estoppel may be applied to the "eligibility/certification" requirements of the FMLA.[24]

Plaintiffs have provided this court with no authority, be it case law, or regulatory or statutory provisions, that suggest equitable estoppel should, or does, apply to the FMLA. This Court's independent review has shown that the Eleventh Circuit has yet to explicitly determine whether estoppel may be applied to FMLA eligibility certifications. Brungart v. Bellsouth Telecomm. Inc., 231 F.3d 791, 799 n.4 (11th Cir. 2000). Moreover, district courts within this circuit have consistently

---

[24] Plaintiffs state their entire legal argument on this issue in one sentence, "Equitable principles such as estoppel may also be applied to the eligibility/certification requirements of the FMLA," and then move to factual arguments for why equity should intervene. Plaintiffs have cited no case law, no statutory authority, nor any regulations in support of this proposition. (Doc. 148 at 18.) "There is no burden on the district court to distill every potential argument that could be made based upon the material before it on summary judgment." Resolution Trust, 43 F.3d at 599. This Court is aware that 29 C.F.R. § 825.305(b) may be used to toll the obligations of the employee to provide the employer with documentation necessary to obtain certification for medical leave. See 29 C.F.R. § 825.305(b). However, Plaintiffs have not asserted this regulation as a reason for tolling, nor have they provided an explanation as to why this specific regulation would apply. Indeed, Plaintiffs have never even mentioned this regulation. Accordingly, this Court understands Plaintiffs to assert a general argument for equitable estoppel rather than an equitable tolling request based on 29 C.F.R. § 825.305(b) and will rule on the motions for summary judgment accordingly.

declined to apply the doctrine to the FMLA certification requirements. See Martin v. Brevard County Pub. Sch., 2007 WL 496777, *10 (M.D. Fl. 2007) ("Until the Eleventh Circuit mandates differently this Court finds no reason to apply the doctrine of equitable estoppel to the FMLA."), Moore v. Sears Roebuck & Co., 2007 WL 1950405, *9 (N.D. Fl. 2007) (finding that equitable estoppel does not lie for challenges of eligibility under the FMLA), Pennant v. Convergys Corp., 368 F. Supp. 2d 1307, 1313 (S.D. Fl. 2005) ("There is no support from the Eleventh Circuit for applying the doctrine of equitable estoppel in FMLA cases."). Based on this persuasive authority, this Court sees no reason to apply the doctrine here.

However, even if this Court were to use out of circuit precedent to apply the doctrine, Plaintiffs would have to show both actual and reasonable reliance on a promise by CSB that excused Mr. Peery from filling out his forms. Rager v. Dade Behring, Inc., 210 F.3d 776, 779 (7th Cir. 2000). Plaintiffs identify Mr. Points's statements that, "[he] approved Mr. Peery's request for a medical leave of absence, told Mr. Peery to take as much time as he needed, and additionally told Mr. Peery that [his] job would be waiting for him when he returned." (Doc. 148 at 18.)[25] Nothing in Mr. Points's statement appears to

---

[25] Plaintiffs make much of the fact that Mr. Peery did not receive his forms from CSB until after he was fired, making his

be a promise to Mr. Peery that he did not need to, at some time in the future, complete the necessary paperwork if he desired FMLA leave. Indeed, even Mr. Peery admits he either knew or should have known that he needed to fill out the proper paperwork when he took FMLA leave. (Doc. 108, Campbell Perry Dep. at 469-70.)

In light of the above, Mr. Peery cannot make out a prima facia case for an FMLA claim. Accordingly, Plaintiffs' Motion for Summary Judgment on the FMLA claim **DENIED**; CSB's Motion for Summary Judgment on Mr. Peery's FMLA claim is **GRANTED**; and the FMLA claim is **DISMISSED**.

## I.    Plaintiffs' Tenth Claim: Americans with Disabilities Act

In Count Ten, Plaintiffs allege that Defendant CSB terminated Mr. Peery's employment because of his alcoholism, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq. Both Plaintiffs and Defendant CSB have moved for summary judgment on this claim.

The ADA requires that "[a] charge . . . be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Since Mr. Peery

---

failure to fill them out reasonable. For the purposes of equitable estoppel, the relevant question is not simple reasonableness, but reasonable reliance. To estop CSB from asserting the failure to meet the deadline as a defense, Mr. Peery must show a promise by CSB that he relied on, not simply that he was generally reasonable in not returning the forms. See Rager, 210 F.3d at 779.

asserts the ADA violation was associated with his firing, he must assert the violation occurred on, or before, his last day of employment. Mr. Peery's last day of employment at CSB was May 31, 2001. Mr. Peery did not file his charge with the Equal Employment Opportunity Commission (EEOC) until November 16, 2006. Plainly a gap of more than 180 days had elapsed in this time period. Therefore, as the Plaintiffs concede, this claim is time-barred unless an equitable principle operates to extend Mr. Peery's time to file. (Doc. 148 at 22.) Here, unlike the FMLA claim,[26] Plaintiffs provide two theories for why the 180 day deadline was not met, equitable tolling and equitable estoppel. Each is considered in turn.

### 1. Time Bars and Plaintiffs' Motion for Summary Judgment

For Plaintiffs to succeed on summary judgment, they would have to show that there is no material issue of fact with respect to their entitlement to equitable tolling or equitable estoppel. This Court finds an issue of fact remains for the reasons below.

### a. Equitable Tolling

---

[26] As noted above, in the context of the FMLA claim, Plaintiffs raised equitable tolling with respect to one timeliness problem, and estoppel with respect to a different timeliness problem. Here, Plaintiffs raise both equitable tolling and estoppel with respect to the same time bar, and so this Court must consider both.

Similar to the FMLA claim, Plaintiffs fail to cite any legal authority that suggests they are entitled to equitable tolling. (Doc. 148 at 22.) However, CSB concedes that the applicable Supreme Court precedent allows equitable tolling in cases where the complainant has been "induced or tricked by his adversary's misconduct to allow the filing deadline to pass." Irwin v. Dept. of Veteran Affairs, 498 U.S. 89, 96 (1990).

Here, Plaintiffs assert that such trickery occurred. They argue that CSB convinced Mr. Peery that he had no reason to pursue a lawsuit until May, 2006, when CSB rescinded the life insurance policy by removing it from Mr. Peery's investment portfolio at approximately the same time the applicable statute of limitations ran on Mr. Peery's claims. (Doc. 148 at 22.) CSB contends Mr. Peery could not have believed he had any rights in the policy after July 22, 2003, when Peery was informed by letter that:

> Our client will not make any disbursement to Mr. Peery. The purported settlement with him was illegal and invalid. There is no question the CSB is the owner of the Manulife policy.

(Doc. 108, Campbell Peery Dep., Ex. 20.) Therefore, CSB argues that the tolling period should, at the latest, extend to receipt of this letter by Mr. Peery. However, Plaintiffs asserted that in response to the letter, Mr. Peery retained legal counsel, threatened to sue Manulife and CSB over the change of

beneficiaries, and then ultimately decided not to sue because he believed he still owned the life insurance policy. (Doc. 152, Attachment K, Campbell Peery Aff. ¶ 6.) In other words, Plaintiffs were induced not to sue because they believed that, regardless of CSB's actions, they still had control of the policy and, therefore, had suffered no tangible damages as a result of CSB's actions in 2003.

CSB's arguments about the July 22, 2003, letter are not dispositive. The question with respect to equitable tolling is not as simple as whether or not Mr. Peery understood that CSB believed the Settlement Agreement was invalid. Even if Mr. Peery understood this, if CSB engaged in misconduct to induce or trick Mr. Peery into missing his subsequent filing deadlines, it would still be inequitable not to toll the statute of limitations. Nowhere has CSB explained to this Court why it waited nearly three years from the time it first declared the Settlement Agreement invalid to cash out the policy. Surely CSB cannot contend they did not cash out the policy immediately because they did not believe that they had the power to do so. The same power and belief of entitlement to the policy that would have led CSB to revoke the beneficiaries would have entitled them to cash out the policy. The issue of whether CSB waited this long to cash out the policy to induce Mr. Peery not to file a timely lawsuit is, factually, not sufficiently

developed at this stage. Accordingly, a jury question remains with respect to equitable tolling.

### b. Equitable Estoppel

As with their equitable tolling claim, Plaintiffs' fail to cite a single case supporting their contention that equitable estoppel applies. (Doc. 148 at 22.) Moreover, Plaintiffs do not distinguish between the equitable estoppel and equitable tolling claims, providing the Court with only one factual argument for both claims and confusing the claims as interchangeable. (Doc. 148 at 22.)

There is a difference between equitable tolling and equitable estoppel. "[W]hen a plaintiff is entitled to equitable estoppel, the clock stops upon the tolling of the limitations period and begins again when the impediment to bring suit is removed." Cabello v. Fernandez-Larios, 402 F.3d 1148, 1156 (11th Cir. 2005) (emphasis added). Equitable tolling is appropriate where the defendant is not impeded from bringing a timely suit, but rather is tricked into filing his suit in an untimely manner by the opposing party. Id.

Plaintiffs have not cited a separate factual explanation as to why equitable estoppel would apply, so this Court must assume the alleged impediment was Mr. Peery's belief he had a valid

Settlement Agreement. (See Doc. 148 at 22.) Assuming, arguendo, that Mr. Peery was impeded by his belief that he had waived his claims, that entitlement would end shortly after July 22, 2003, the date he received a letter stating that CSB did not believe the Settlement Agreement to be legal or valid. (Doc. 108, Campbell Peery Dep., Ex. 20.) Indeed, Mr. Peery concedes that after CSB changed the beneficiaries on the policy, he considered suit—necessarily implying that he was aware he could sue—but decided against it for lack of a true loss, as he believed he was still the owner of the policy. (Doc. 152, Attachment K, Campbell Peery Aff. ¶ 6.) Beginning the clock again on that date would require Plaintiffs to have filed their claim, roughly, within 180 days of July 22, 2003. Here Plaintiffs filed their claim on November 16, 2006; well outside of the 180 day window beginning on July 22, 2003. Accordingly, equitable estoppel does not help Plaintiffs' Motion for Summary Judgment.

      **c.**    **Conclusion with Respect to Plaintiffs' Motion for Summary Judgment**

Plaintiffs cannot succeed on an action which is time-barred. For the ADA action to be timely Plaintiffs would need equitable tolling or equitable estoppel to apply. Equitable estoppel does not apply, but there is an issue of fact as to whether equitable tolling does. Therefore, it is

42

unnecessary to consider the merits of Plaintiffs' ADA claim, as the dispositive question of the timeliness of the claim is properly a jury issue. Accordingly, Plaintiffs' Motion for Summary Judgment with respect to the ADA claim is **DENIED**.

### 2.   Defendant CSB's Motion for Summary Judgment

Defendant CSB moves for summary judgment on this claim as well. However, because this Court finds factual disputes with respect to their arguments, CSB's Motion is **DENIED**.

#### a.   Waiver

Defendant CSB has asserted that Mr. Peery waived his right to bring an ADA action through the Settlement Agreement. (Doc. 102 at 26.) There is an issue of fact as to whether the Settlement Agreement is valid, and so this argument is not sufficient for a grant of summary judgment. See supra Part B.

#### b.   Statute of Limitations

This Court has already determined that factual issues exist as to whether or not Plaintiffs' ADA claim is timely.[27] Accordingly, it is not appropriate to grant summary judgment to CSB on this issue.

---

[27] CSB directs this Court's attention to the fact that the EEOC determined Mr. Peery's filing of his charge was untimely. However, that determination is not dispositive here. Courts are not bound by the EEOC's determinations on the timeliness of filing, but rather may make their own determinations as to whether equitable doctrines apply to toll the limitations period. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-15 (2002), Goldman v. Sears, Roebuck, & Co., 607 F.2d 1014, 1017 (1st Cir. 1979).

### c.  **Prima Facia Case**

Defendant CSB contends that they are entitled to summary judgment because Plaintiffs cannot establish a prima facia case under the ADA.

To establish a prima facia case under the ADA Mr. Peery must be able to show that he, "(1) had, or was perceived to have, a 'disability'; (2) was a 'qualified' individual; and (3) was discriminated against because of [his] disability." Carruthers v. BSA Adver., Inc., 357 F.3d 1213 (11th Cir. 2004); see also 42 U.S.C. § 12112(a).  CSB does not dispute that Mr. Peery had a disability, alcoholism,[28] and that he was qualified for his job.  (Doc. 102 at 31-35.)  Rather, CSB asserts numerous arguments that, under the third prong of the test, Mr. Peery was not discriminated against because of his disability.  This Court considers each in turn.

First, CSB contends that, Mr. Peery's resignation under the Settlement Agreement was voluntary, and so Mr. Peery cannot assert discrimination because he was never discharged.  The ADA requires discrimination with respect to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

---

[28] There is little doubt that alcoholism is a disability under the ADA. Bailey v. Ga. Pac. Corp., 306 F.3d 1162, 1167 (1st Cir. 2002), Schwartz v. City of Treasure Island, 521 F. Supp. 2d 1307, 1317 (M.D. Fl. 2007).

conditions, and privileges of employment." 42 U.S.C. § 12112(a). However, CSB's contention that there is no factual dispute as to Mr. Peery's voluntary resignation is undermined by the testimony of board member John B. Cheatham. Mr. Cheatham indicates that Mr. Peery left his job either because he was fired, or because some functionally equivalent personnel action took place. (Doc. 134, Cheatham Dep. at 73-75; see also Doc. 135, Nancy Williamson Dep. at 75.) Accordingly, there is conflicting evidence, and therefore a jury question, as to whether Mr. Peery was discharged.

Second, CSB contends that, because a majority of the board did not know Mr. Peery was an alcoholic, the board as a whole could not have discriminated against him. Further, CSB contends that there can be no factual dispute that a majority of the board did not know Mr. Peery was an alcoholic. This latter assertion is problematic. First, CSB has already conceded that at least one board member knew of Mr. Peery's alcoholism from the moment he went on leave. (Doc. 102 at 32.) Moreover, by the time Mr. Peery was terminated in the April 24 meeting, at least two other board members likely knew this information as well. (Doc. 134, Cheatham Dep. 39-40; Doc. 135, Williamson Dep. 79:19 to :23.) Second, CSB's personnel actions took place in closed executive session, leaving no evidence of what was

discussed during the meeting.[29]  (Doc. 134, Cheatham Dep. 75:1 to :2, Ex. 99.)  Taken together, it is clear that some board members present at the meeting where Mr. Peery's employment was terminated knew of Mr. Peery's alcoholism, and that there is no way for this Court to determine whether or not they communicated this information to other board members during these discussions.  The question reduces to one concerning the credibility of the board members asserting that they kept Mr. Peery's condition in confidence at that meeting.  It is a longstanding principle that the job of determining the credibility of a witness "is . . . for the jury alone." Chesapeake & Ohio R.R. Co. v. Martin, 283 U.S. 209, 216 (1931). Therefore, this argument ends in a jury question as well.

Third, CSB argues that the board's discussions about Mr. Peery had nothing to do with alcoholism, and provides the court with reference to numerous affidavits of board members of this effect.  (Doc. 102 at 33.)  CSB then points out that there is no evidence that Mr. Peery's alcoholism was discussed.  (Id. at 34.)  As explained above, CSB held the meeting about Mr. Peery in private.  Therefore, it can no more prove that Mr. Peery's alcoholism was not discussed, than Mr. Peery can prove that it

---

[29] CSB makes much of the fact that there is no evidence that Mr. Peery's alcoholism was discussed during the executive session. However, because there are no records of these sessions, CSB can no more prove that Mr. Peery's alcoholism was not discussed at these sessions than Mr. Peery can prove it was.

was discussed. Moreover, the board members' credibility as to what happened at this meeting could be considered dubious, as they all share the same reason to lie if Mr. Peery was fired in violation of the ADA.[30] Again, this reduces to a credibility determination, which is the function of the jury, not the Court on summary judgment.

Fourth, CSB argues that the board did not discriminate against Mr. Peery because it discharged him for unsatisfactory performance of his job and not his alcoholism. CSB again rests on the statements of its board members and the lack of evidence as to what happened at the meeting. The same problem for CSB resurfaces here. This Court has no way of knowing what happened at the board meeting, and the credibility of the testimony of the board members is a jury question. Moreover, Mr. Peery has shown that during his tenure his performance review was very good. (Doc. 118, Attachment Y) (written performance review.) It is also undisputed that Mr. Peery was fired immediately upon his return from alcohol rehabilitation. Therefore, Mr. Peery does provide circumstantial evidence that his firing was a suspect personnel action.

In sum, a factual dispute remains as to what happened at the unrecorded board meeting, and the credibility of the

---

[30] This Court is not suggesting that the board members are lying; it is simply suggesting that there is a sufficient motive for bias to make that determination a jury question.

testimony of the board members themselves is a question for the jury. Therefore, this Court cannot find the Mr. Peery has failed to make out a prima facia case for ADA discrimination on summary judgment.

### d. CSB's Remaining Arguments

CSB next asserts that, even if Mr. Peery has a prima facie case, the board had a legitimate non-discriminatory reason for its actions, and Mr. Peery cannot prove that the reason was not pre-textual. Again, neither side can prove what happened at the board meeting because the board does not keep records of discussions on personnel decisions. Mr. Peery's circumstantial evidence that the board, which appeared to be generally happy with his performance, fired him soon after it learned he had an alcohol problem is sufficient to create a factual dispute as to CSB's arguments for summary judgment. These arguments cannot carry CSB's Motion for Summary Judgment on this issue either.

### e. Conclusion as to CSB's Motion for Summary Judgment

In light of the above, CSB has not shown that they are entitled to summary judgment on the ADA claim. Accordingly, CSB's Motion for Summary Judgment on Mr. Peery's ADA claim is **DENIED**.

### 3. Conclusion

In light of the above, Plaintiffs' Motion for Summary Judgment on the ADA claim **DENIED** and CSB's Motion for Summary Judgment on Peery's ADA claim is **DENIED**.

## J.   CSB's First Counterclaim: Rescission of the Settlement Agreement

In its first Counterclaim, CSB alleges that it is entitled to rescind the Settlement Agreement. (Doc. 51 at 23.) CSB has not moved for summary judgment on this claim. Plaintiffs have moved for summary judgment on this claim contending that CSB's fraud claims fail as a matter of law. (Doc. 116 at 15-17.)

As explained above, there is a material issue of fact as to whether or not Mr. Peery used fraud to procure the Settlement Agreement between himself and CSB.[31]  See supra Part B.1.

Plaintiffs also contend that this action is barred by a statute of limitations.[32]  Plaintiffs assert two statute of limitations, O.C.G.A. §§ 9-3-26, 9-3-31.  (Doc. 157 at 23.) Each is considered in turn.

---

[31]  In their argument relating to fraud, Plaintiffs argue that under Almond v. McCranie, 283 Ga. App. 887, 889, 643 S.E.2d 535, 537 (2007), CSB cannot establish the elements of fraud. However, Plaintiffs' argument understands CSB to be asserting that the insurance contract was procured by fraud. (Doc. 116 at 17.)  This argument is non-responsive to CSB's actual claim, which is that the Settlement Agreement was procured by fraud. (Doc. 51 at 23.) Accordingly, this Court will not address this argument by Plaintiffs any further.

[32]  Here CSB asserts fraud as a counterclaim and not a defense, and so the Court's previous reasoning as to the fraud statute of limitations, supra Part B.1, does not apply.

49

O.C.G.A. § 9-3-26 provides, in part, that "[a]ll other actions upon contracts express or implied not otherwise provided for shall be brought within four years from the accrual of the right of action." Plaintiffs have cited no case law applying this statute to a claim for rescission due to fraud, and this Court's independent review has shown none.[33] Moreover, an action for fraud, regardless of its remedy, sounds in tort not in contract. Therefore this statute of limitations is inapplicable.

Plaintiffs also assert O.C.G.A. § 9-3-31, which is the four-year statute of limitations for a fraud action. Plaintiffs contend that Mr. Peery could not have defrauded CSB after he left its employ and therefore the latest date that the statute could run from would be the last day of his employment. However, "[w]hen actual fraud is the gravamen of the action . . . the statute of limitations is tolled until the fraud is discovered or by reasonable diligence should be discovered." Paul v. Destito, 250 Ga. App. 631, 637, 550 S.E.2d 739, 746 (2001). Plaintiffs repeatedly ignore this case law, and cite to none which is contrary, ignoring even the possibility of tolling. CSB contends it did not discover the fraud until Nancy

---

[33] In general, where there is an action for cancellation or rescission of a contract because of fraud, Georgia Courts apply the statute of limitations applicable to fraud, not contracts. See Troup v. Troup, 248 Ga. 662, 663, 285 S.E.2d 19, 19 (1981).

Williamson's meeting with Mr. Peery in April, 2003. (Doc. 142 at 23.) Assuming this is true, the statute of limitations would not have run until April 2007, four years from that date. This places the fraud counterclaim within the statute of limitations, as CSB's first answer, filed January 16, 2007, contained a fraud counterclaim. (Doc. 10 ¶¶ 35-39.) Any subsequent amendments to the fraud claim would relate back to this date, as they would be correcting deficiencies or modifying facts alleged. See Fed. R. Civ. P. 15(c), 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1497 (2d ed. 1990). Therefore, this Court, based on the arguments before it, cannot conclude that the rescission action is barred by that statute of limitations.

Accordingly, Plaintiffs' Motion for Summary Judgment on the fraud aspects of the rescission claim is **DENIED**.

**K.** **CSB's Second Counterclaim: Breach of Good Faith and Fiduciary Duty by Mr. Peery**

In its second Counterclaim, Defendant CSB alleges that Mr. Peery breached his good faith and fiduciary duties as the Executive Director of CSB. CSB alleges that Mr. Peery failed to exercise skill, loyalty, and absolute good faith for and on behalf of CSB. It further alleges that Mr. Peery breached his duty of good faith by defrauding CSB. CSB contends that it was damaged by Mr. Peery's breaches because they permitted Michael

51

Brockman, Robin Williams, Duncan Fordham, Fordham, Inc., and Rick Camp to defraud CSB into paying them $1,232,606 without receiving any valuable goods or services in exchange. (Doc. 51 at 23-24.) Plaintiffs have moved for summary judgment, contending that there is no actionable duty of good faith in Georgia, that Mr. Peery could not have violated a duty of good faith he did not have,[34] and that this action is barred by the statute of limitations.

Plaintiffs baldly assert that "Georgia law does not recognize a cause of action for an alleged breach of the duty of good faith," but neither cite authority to support, nor provide any explanation of, that position. (Doc. 116 at 21.) In fact, Georgia does recognize a duty of good faith on behalf of directors and officers, at least in some circumstances. See O.C.G.A. § 14-2-830, Mon Ami Int'l, Inc., v. Gale, 264 Ga. App. 739, 743, 592 S.E.2d 83, 87-88 (2003), Parks v. Multimedia Techs., Inc., 239 Ga. App. 282, 289-90, 520 S.E.2d 517, 524 (1999). Therefore, Plaintiffs' argument on this point is without merit.

---

[34] Although Plaintiffs have failed to clearly state their argument here, they appear to be claiming that CSB is asserting a violation of a fiduciary duty by Mr. Peery after he resigned. As this Court understands CSB's counterclaim, they are referring to breaches of fiduciary duty while Mr. Peery was Executive Director of CSB. (See Doc. 51 at 23-24.) Therefore, this argument does not need to be addressed because it is not responsive to CSB's counterclaim.

Plaintiffs assert that this action is barred by a four year statute of limitations found at O.C.G.A. § 9-3-26. This statute of limitations applies to miscellaneous breaches of contract. It provides that "[a]ll other actions upon contracts express or implied not otherwise provided for shall be brought within four years from the accrual of the right of action." O.C.G.A. § 9-3-26. In Georgia, the statute of limitations applicable to a breach of fiduciary duty is the statute of limitations which applies to the conduct that caused the breach. See Hendry v. Wells, 286 Ga. App. 774, 779, 650 S.E.2d 338, 343-44 (2007) (applying the statute of limitations for injuries to personality to a breach of fiduciary duty in which fiduciaries made material misrepresentations about net sales proceeds, preventing limited partners from protecting their investments accordingly), Crosby v. Kendall, 247 Ga. App. 843, 848, 545 S.E.2d 385, 390-91 (2001) (applying the statute of limitations for written contracts to a breach of fiduciary duty where the fiduciary breeched a written escrow agreement). Whatever the applicable Georgia statute of limitations is here, it is not the statute of limitations for other actions ex contractu. CSB never once alleges that any breach of fiduciary duty is related to a contract at all. (Doc. 51 ¶¶ 20-24.) Instead, the counterclaim alleges violations of a fraudulent nature. Plaintiffs have not raised the statute of limitations for fraud as an affirmative defense to the fiduciary

53

duty counterclaim. Accordingly, Plaintiffs' statute of limitations argument does not help them here.

In light of the above, Plaintiffs' Motion for Summary Judgment with respect to the breach of fiduciary duty counterclaim is **DENIED**.

## L.   CSB's Third Counterclaim: Georgia RICO Act

In its Amended Counterclaim, CSB alleges a violation of Georgia's Racketeer Influenced and Corrupt Organizations ("RICO") Act, O.C.G.A. §§ 16-14-1 et seq. CSB contends that Mr. Peery engaged in a pattern of racketeering activity, allowing him to illegally obtain the settlement in question, of which Mr. Peery is alleged to presently have 59,000 dollars. (Doc. 51 ¶ 24; Doc. 142 at 25.)

Plaintiffs, but not CSB, have moved for summary judgment on this claim. They contend that the statute of limitations bars this action and that Mr. Peery has not completed two or more acts which would place him under the ambit of the statute.

### 1.   Statute of Limitations

Plaintiffs have asserted that this action is barred by Georgia's RICO statute of limitations. The statute of limitations for a Georgia RICO claim is five years from the date the cause of action accrues or the conduct in violation of RICO ends. See O.C.G.A. § 16-14-8, Chang v. Bank of Am., 251 Ga. App. 577, 577, 554 S.E.2d 765, 766 (2001). Georgia courts

understand the language in the statute, "the cause of the action accrues," to mean that the five year limitations period does not begin until "the plaintiff discovers, or reasonably should have discovered, that he has been injured and that that injury is a part of a pattern."[35] S. Intermodal Logistics, Inc. v. D.J. Powers Co., 251 Ga. App. 865, 867-68, 555 S.E.2d 478, 481 (2001). If the timing of the discovery of the injury, or the discovery of the pattern which caused the injury, is in dispute, a jury question remains with respect to the statute of limitations issue. Id. at 869-70, 555 S.E.2d at 482.

Here, Plaintiffs have failed to respond either factually or legally to CSB's argument that they had no reason to know the cause of action had accrued until April 2003, nearly two years after Plaintiffs assert the last potential RICO violation could have occurred. (See Doc. 142 at 24-25; Doc. 157.) Moreover, CSB points to the deposition of Nancy Williamson, which provides factual evidence that the board may not have known of the violation until April 2003. (Doc. 135, Nancy Williamson Dep. at 166-71.) If CSB was not aware of the RICO violations until this date, the five year period would have began in April 2003,

---

[35] Plaintiffs draw the Court's attention to Stewart v. Warner, 257 Ga. App. 322, 571 S.E.2d 189 (2002). This case is of no help to Plaintiffs. It refers to the statute of limitations for theft, not for RICO. Since there is Georgia case law specifically on the running of the RICO statute of limitations, this Court will apply that precedent.

making this litigation timely. Therefore, Plaintiffs have not shown this action to be barred by the statue of limitations.

2. **Two or More Acts**

O.C.G.A. §§ 16-14-1 requires proof of two or more predicate criminal acts of the type provided in the statute to prove an enterprise engaged in a pattern of criminal activity. Mosley v. State, 253 Ga. App. 710, 711-12, 560 S.E.2d 305, 308 (2002). Plaintiffs also contend that CSB has not alleged, or that there are not facts to establish, at least two criminal acts of the type required to prove a Georgia RICO violation. However, in their complaint, CSB has asserted at least six predicate criminal acts. (Doc. 51 at 24.) Plaintiffs cite no authority in their Motion for Summary Judgment concerning this counterclaim, and do not attempt to explain to this Court the legal basis for their conclusion that there are fewer than two acts that may be considered predicate RICO crimes. (Doc. 116 at 19-20). This Court will do its best to ascertain the Plaintiffs' arguments based on the factual summary they have provided in support of their Motion for Summary Judgment.

First, Plaintiffs apparently believe that, because Mr. Peery was not prosecuted criminally, CSB is now barred from bringing their RICO claims. (Id. at 19.) The United States Supreme Court has already stated that in a civil RICO case the defendant need not have been found guilty of a criminal RICO

violation. _Sedima, S.P.R.L. v. Imrex Co._, 473 U.S. 479, 493 (1985).[36] To the extent this is Plaintiffs' assertion, it has no merit.

Second, Plaintiffs appear to be asserting that, because CSB did not make an insurance claim for loss caused by Mr. Peery, it is factually undisputed that Mr. Peery is not guilty of RICO violations. However, there could be numerous reasons why Mr. Peery does not appear on the insurance claim despite causing loss to CSB in violation of the RICO act. Including, as CSB asserts, "[t]he fact [that] the Settlement Agreement was not included in CSB's final insurance claim simply reflects the compromise between CSB and its fidelity insurer which did not include reimbursement for sums paid to Peery." (Doc. 161 at 5.) Accordingly, Plaintiffs have failed to show uncontested facts that would defeat CSB's RICO claims on summary judgment under this theory.

Third, Plaintiffs appear to argue that CSB's RICO claims cannot survive summary judgment because CSB has not shown a pattern of criminal conduct. As explained above, for the Georgia RICO to attach, CSB must only show evidence of two criminal acts. _Mosley_, 253 Ga. App. at 711-12, 560 S.E.2d at

---

[36] Because Georgia's RICO statute is modeled after the federal RICO statute, Georgia courts look to federal authority when interpreting the state statute. _Sec. State Bank v. Visiting Nurses Ass'n of Telfair County, Inc._, 256 Ga. App. 374, 568 S.E.2d 491 (2002).

308. While, CSB has asserted at least six such acts, Plaintiffs have only asserted the lack of a factual dispute as to two (mail fraud and theft by taking), and they have done so in a purely conclusory manner. (Doc. 116 at 20; Doc. 157 at 23.) Even if these conclusory assertions were sufficient to support their Motion for Summary Judgment with respect to those two violations, four uncontested RICO violations would remain. Therefore, this argument is insufficient to defeat CSB's RICO claim on summary judgment.

### 3. **Conclusion**

This Court has found factual disputes with respect to both the conduct underlying the RICO charge, and the time from which the statute of limitations began to run. Accordingly, Plaintiffs' Motion for Summary Judgment with respect to the RICO counterclaim is **DENIED**.

## M. **CSB's Fourth Counterclaim: Fraud and Conspiracy**

In its fourth Counterclaim, Defendant CSB alleges that Mr. Peery engaged in a conspiracy to defraud CSB. (Doc. 51 ¶¶ 33-37.) Plaintiffs have moved for summary judgment on this claim, CSB has not.[37]

---

[37] Plaintiffs' Motion for Summary Judgment treats CSB's counterclaims One and Four as the same claim, and provides no separate arguments as to why if summary judgment was denied on counterclaim one, it should be granted on counterclaim four. (Doc. 116 at 15.)

For the same reasons contained above, this Court finds material issues of fact as to whether or not fraud occurred, see supra Part B.1, and whether this action is barred by the statute of limitations. See supra Part J. Therefore, Plaintiffs' Motion for Summary Judgment with respect to the fraud claim is **DENIED**.

## N.  CBS's Fifth Counterclaim: Punitive Damages

In its fifth Counterclaim, Defendant CSB alleges that it is entitled to punitive damages. (Doc. 51 ¶¶ 38-40.) Were it not for the fact that Plaintiffs moved for summary judgment on "all" of CSB's counterclaims, this Court would not have known Plaintiffs believed they were entitled to summary judgment on this claim. (Doc. 115 at 1.) Plaintiffs never mention the punitive damages claim in their supporting memorandum. (See Doc. 116.)

As the United States Supreme Court has explained:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material facts.

Celotex, 477 U.S. at 323. Plaintiffs have wholly failed to carry this burden. Accordingly, Plaintiffs' Motion for Summary Judgment, with respect to the punitive damages issue is **DENIED**.

O.  **CSB's Sixth Counterclaim: Attorney's Fees & Litigation
Expenses**

In its sixth Counterclaim, Defendant CSB alleges that it is
entitled to attorney's fees and litigation expenses.  (Doc. 51
¶¶ 41-42.)  As with the punitive damages claim, were it not for
the fact that Plaintiffs moved for summary judgment on "all" of
CSB's counterclaims, this Court would not have known Plaintiffs
believed they were entitled to summary judgment on this claim.
(Doc. 115 at 1.)  Plaintiffs never mention the attorney's fees
and litigation expenses claim in their supporting memorandum.
(See Doc. 116.)

As discussed above, Plaintiffs have wholly failed to carry
this burden.   Accordingly,  Plaintiffs' Motion for Summary
Judgment, with respect to the attorney's fees and litigation
expenses issue is **DENIED**.

P.  **Plaintiffs' Fourth "Affirmative" Defense: Attorney's Fees
Pursuant to O.C.G.A. § 13-6-11**

In their fourth affirmative defense to CSB's Counterclaim,
Plaintiffs assert that they are entitled to recover attorney's
fees under O.C.G.A. § 13-6-11 for having to defend against CSB's

counterclaim.[38]     CSB argues that § 13-6-11 does not permit
recovery for expenses incurred in defending a claim.  Plaintiffs
respond that CSB "is technically correct that fees are not
available under O.C.G.A. § 13-6-11 for simply defending against
a claim."  (Doc. 148 at 25.)  Plaintiffs argue, however, that
the "frivolous nature" of CSB's counterclaims should allow them
to recover under § 13-6-11.  Once again, Plaintiffs fail to cite
any authority which would support their position.

Plaintiffs' claim fails as a matter of law because "there
can be no recovery under O.C.G.A. § 13-6-11 for expenses
incurred in the defense of a claim."  Lineberger v. Williams,
195 Ga. App. 186, 188-89, 393 S.E.2d 23, 25-26 (1990).  With
respect to a defendant's counterclaim, a plaintiff becomes the
defendant and is therefore not entitled to fees under this
statute.   Id. at 188, 393 S.E.2d at 26.   In this case,
Plaintiffs have theorized that O.C.G.A. § 13-6-11 provides them
with a recovery of attorney's fees associated with only the
defense of their counterclaim.  They have cited no authority to
support that proposition, and none exists.  Accordingly, CSB's
Motion for Summary Judgment is **GRANTED** with respect to the claim

---

[38] It is clear that Plaintiffs' claim under O.C.G.A. § 13-6-11 is
for fees associated with defense of the counterclaim only, and
not with the action in general.  Plaintiffs seek fees based upon
the alleged "bad faith nature of and the stubborn litigiousness
reflected in [CSB]'s Counterclaim, and the unnecessary trouble
and expense which they have caused Plaintiffs in having to
respond to the same."  (Doc. 61 at 13-14.)

for attorney's fees under O.C.G.A. § 13-6-11.  Plaintiffs' claim
for attorney's fees under O.C.G.A. § 13-6-11 is **DISMISSED**.

CONCLUSION

For the foregoing reasons, this Court makes the following
rulings.  Plaintiffs' Motion for Summary Judgment is **DENIED** in
its entirety.  Manulife's Motion for Summary Judgment is **GRANTED
IN PART** and **DENIED IN PART**.  CSB's Motion for Summary Judgment
is **GRANTED IN PART** and **DENIED IN PART**.  All of CSB's
counterclaims remain.  Plaintiffs' first[39] and third[40] claims
remain, in part; and second and tenth claims remain in whole.

SO ORDERED this **30**th day of September, 2008.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[39] This claim remains except that Ms. Peery may not assert it,
and that to the extent Plaintiffs base this claim on an
independent "verbal side agreement" CSB has properly asserted
sovereign immunity.
[40] Claim three remains only to the extent that it is asserted
against Manulife.