U.S. DISTRICT COURT
Southern District of Ga.
Filed in Office
5:05 P. M
May 4 20 09

Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

F. CAMPBELL PEERY and CAROLYN ) PEERY, )
)
    Plaintiffs, )
)
v. )    CASE NO. CV106-172
)
SERENITY BEHAVIORAL HEALTH )
SYSTEMS and THE MANUFACTURERS )
INSURANCE COMPANY (U.S.A.), )
)
    Defendants. )
_____ )

## O R D E R

Before the Court is Defendant Serenity Behavioral Health System's Motion for Eleventh Amendment Immunity. (Doc. 207.) For the reasons that follow, the Motion is **DENIED**. The parties will proceed to trial on the claims **as stated in the Complaint**.

### BACKGROUND

This is an extremely complicated case about the termination of Plaintiff F. Campbell Peery from his position as Executive Director of Serenity Behavioral Health Systems ("Serenity"), a community service board ("CSB") in Georgia. The background facts have been repeatedly, and exhaustively, stated in other orders in this case. Therefore, the Court limits the background here to the facts relevant to the Eleventh Amendment Motion.[1]

_____

[1] For a complete factual account, see Doc. 170 at 2-5.

Plaintiffs' Complaint refers to Serenity as a "state agency" in several places, even stating that

> While Mr. Peery is estopped, on Eleventh Amendment sovereign immunity grounds, from seeking compensatory or punitive damages against Defendant Serenity Behavioral Health Systems, a state agency, for its violation of Mr. Peery's rights under the ADA, Defendant Serenity Behavioral Health Systems remains liable for any injunctive and equitable relief available to Mr. Peery under the ADA, including reinstatement, backpay, reasonable attorneys' fees and all other recoverable costs.

(Doc. 1 ¶ 87) (internal citations omitted.) In Serenity's Answer, the sixteenth[2] defense from suit is "This Defendant is entitled to Eleventh Amendment immunity." (Doc. 10 at 5.) Serenity has twice moved this Court to dismiss claims due to state-conferred sovereign immunity.[3] The first was in a Motion to Dismiss with respect to Plaintiffs' state law tort claims. (Doc. 38.) The second was Serenity's Motion for Summary Judgment with respect to other specific state law claims. (Doc. 101.) The Court granted immunity each time. (Docs. 79 & 170.)

In neither of these Motions, nor in any other motions, did Serenity assert Eleventh Amendment immunity as a defense to any claim. In a Motion in Limine, Serenity asked this Court to exclude certain evidence on the basis of Eleventh Amendment immunity. (Doc. 186 at 14.) As this Court had not decided that

---

[2] Serenity's Answer included thirty-six defenses. (Doc. 10.)
[3] The defense of state-conferred sovereign immunity is found in Serenity's eleventh and fourteenth defenses. (Doc. 10.)

Serenity was entitled to Eleventh Amendment immunity, the Court was confused by the Motion. Accordingly, at the Pretrial Conference, the Court directed Serenity to file a Motion asserting Eleventh Amendment immunity if it was to be used as a defense. Serenity then filed the instant Motion asserting Eleventh Amendment immunity. (Doc. 207.)

**ANALYSIS**

The narrow issue before the Court is whether the Eleventh Amendment provides Serenity immunity from suit under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so." Wisc. Dept. of Corr. v. Schacht, 524 U.S. 381, 389 (1998).

The exact nature of Eleventh Amendment immunity is elusive. Eleventh Amendment immunity "shares features with affirmative defenses, while also containing traits more akin to subject-matter jurisdiction." United States ex rel. Burlbaw v. Orenduff, 548 F.3d 931, 941 (10th Cir. 2008). Like other

jurisdictional issues, Eleventh Amendment immunity can be raised for the first time on appeal. Edelman v. Jordan, 415 U.S. 651, 677-78 (1974). However, as with an affirmative defense, the burden of raising the issue rests with the defendant, not the court and not the plaintiff.[4] Schacht, 524 U.S. at 389.

I.  Judicial Admissions & Stipulations

Defendant Serenity contends that Plaintiffs have made binding judicial admissions that Serenity is "a state agency for the purposes of the Eleventh Amendment" in their pleadings, and that Plaintiffs have stipulated to the same in an attachment to the Pretrial Order. (Doc. 207 at 4.) Plaintiffs respond that they admit Serenity is a state agency, but do not admit Serenity is an "arm of the state" entitled to Eleventh Amendment immunity. (Doc. 226 at 2.) They further contend that even if they made such an admission, it would be invalid because a grant of Eleventh Amendment immunity is a question of law to which the doctrine of judicial admission is inapplicable. (Id. at 7.)

---

[4] As this Court noted in the background, this is the first time that Serenity has actually raised the Eleventh Amendment issue. Serenity blames Plaintiffs for failing to raise this issue earlier and contends they are prejudiced by Plaintiffs' delay. Apparently, Serenity's counsel held the misguided belief that Serenity had no obligation to file an actual Motion asserting Eleventh Amendment immunity. Instead, they puzzlingly suggest that by pleading Eleventh Amendment immunity, Plaintiffs were required to file a Motion on the issue. Plaintiffs cannot serve as Serenity's scapegoat here. See Schacht, 524 U.S. at 389 ("Unless the State raises the matter, a court can ignore it." (emphasis added)).

4

A party is bound by the factual admissions in his pleadings. _Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc._, 713 F.2d 618, 621 (11th Cir. 1983). Indeed, "facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." _Id._ (quoting _Hill v. Fed. Trade Comm'n_, 124 F.2d 104, 106 (5th Cir. 1941)). However, judicial admissions apply only to facts and not questions of law. _See, e.g._, _McCaskill v. SCI Mgmt. Corp._, 298 F.3d 677, 682 (7th Cir. 2002), _N.Y. State Nat'l Org. for Women v. Terry_, 159 F.3d 86, 97 n.2 (2d Cir. 1998).

The law on stipulations is similar. "It is well settled that stipulations of fact fairly entered into are controlling and conclusive, and courts are bound to enforce them." _A. Duda & Sons Coop. Ass'n v. United States_, 504 F.2d 970, 975 (5th Cir. 1974).[5] However, the Court is not required to accept stipulations as to the law. _Sandford's Estate v. Comm'r of Internal Revenue_, 308 U.S. 39, 51 (1939).

In their Motion, Serenity contends that Plaintiffs' stipulation and admissions conclusively determine this issue. Serenity identifies four admissions and one stipulation in

---

[5] In _Bonner v. City of Prichard_, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

support of its argument: (1) Plaintiffs' Complaint ¶ A, (2) Plaintiffs' Complaint ¶ 3, (3) Plaintiffs' Complaint ¶ 69, (4) Plaintiffs' Complaint ¶ 87, and (5) Attachment A of the Pretrial Order. (Doc. 216 at 4-6.) Of this list, (2), (3), and (5) plainly do not admit Serenity is immune from suit, simply that Serenity is a state agency. (Doc. 1 ¶ 3) ("SERENITY BEHAVIORAL HEALTH SYSTEMS (formerly d/b/a the "Community Service Board of East Central Georgia" and/or "the Community Mental Health Center of East Central Georgia" and hereinafter the "CSB") is a state agency. . . ."); (Doc. 1 ¶ 69) ("Defendant Serenity Behavioral Health Systems wrongfully utilized its authority as an agency of the State to . . . ."); (Doc. 182, Attach. A ¶ 1) ("The Community Service Board of East Central Georgia d/b/a Serenity Behavioral Health systems ("CSB") is a state agency.") Statements (1) and (4) address the damages that Plaintiff F. Campbell Peery will seek under the ADA. Statement (1) is in the background section of the Complaint and explains that Plaintiffs will seek "reinstatement [of F. Campbell Peery] into his former position as the Executive Director and CEO of Serenity Behavioral Health Systems, all other non-monetary injunctive and equitable relief to which he is entitled under [the ADA]." (Doc. 1 ¶ A.) Statement (4) is the actual statement of the ADA claim, which provides:

> While Mr. Peery is estopped, on Eleventh Amendment
> sovereign immunity grounds, from seeking compensatory
> or punitive damages against Defendant Serenity
> Behavioral Health Systems, a state agency, for its
> violation of Mr. Peery's rights under the ADA,
> Defendant Serenity Behavioral Health Systems remains
> liable for any injunctive and equitable relief
> available to Mr. Peery under the ADA, including
> reinstatement, backpay, reasonable attorneys' fees and
> all other recoverable costs.

(Doc. 1 ¶ 87) (internal citations omitted.) This statement
elaborates on the introductory material, stating that the
Plaintiffs will not seek compensatory or punitive damages, but
will seek reinstatement, backpay, attorneys' fees, and other
costs under the ADA. (Id.) How this could be understood to be
a total admission of Eleventh Amendment immunity is puzzling.
Plaintiffs not only stated that they believed they were entitled
to certain types of damages, they expressly enumerated the
damages to which they believed they were entitled.[6]

Further, even if Plaintiffs, arguendo, did admit that
Serenity had total immunity, that admission would be disallowed
as an admission relating to a question of law. That is, a
party's entitlement to Eleventh Amendment immunity is a question
of law. Summit Med. Assocs., P.C., v. Pryor, 180 F.3d 1326,

---

[6] Serenity also makes an argument with respect to these
admissions and Ex Parte Young. 209 U.S. 123 (1908). The Court
need not address this argument because it refers to an exception
allowing a private party to sue an entity that has Eleventh
Amendment immunity. There is no need to consider whether
Plaintiffs fall into an exception to Eleventh Amendment immunity
because Serenity is not entitled to the immunity to begin with.

1334 (11th Cir. 1999) ("[A] district court's denial of a motion to dismiss on Eleventh Amendment grounds is a question of law subject to de novo review."). The doctrine of judicial admission is inapplicable to conclusions of law, McCaskill, 298 F.3d at 682, and stipulations that reach incorrect conclusions of law are not required to be recognized by the Court, Sandford's Estate, 308 U.S. at 51. As such, Plaintiffs could no more concede that Serenity is immune from suit under the Eleventh Amendment than they could concede that Serenity is entitled to foreign sovereign immunity. Therefore, the Court finds that Plaintiffs have admitted that Serenity is a state agency, but not that Serenity has complete Eleventh Amendment immunity.

## II. Serenity's Sovereign Immunity

In light of the admission that Serenity is a state agency, the Court now considers whether Serenity is entitled to Eleventh Amendment immunity. The Eleventh Amendment protects states and "arms of the state" from being sued in federal court. Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)). This Circuit employs a four factor test to determine an entity's status as an arm of the state: "(1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its

funds; and (4) who is responsible for judgments against the entity."[7]  Id. at 1309.  This Court first reviews the structure and functions of CSBs under state law and then applies the factors.  See id.

   A.   The Contours of Community Service Boards

   Community Service Boards ("CSBs") were created to help citizens of Georgia who are "mentally ill or developmentally disabled."  O.C.G.A. § 37-2-1.  In creating CSBs, the state added a Division of Mental Health, Developmental Disabilities, and Addictive Diseases to the Department of Human Resources ("DHR").  O.C.G.A. § 37-2-2.1.  This Division is responsible for designating the areas for which each CSB will provide mental health services.  O.C.G.A. § 37-2-3(b).

   CSBs are "public corporation[s] and [] instrumentalit[ies] of the state;" however, "the liabilities, debts, and obligations of a community service board shall not constitute the liabilities, debts or obligations of the state."  O.C.G.A. § 37-2-6(a);  accord O.C.G.A. § 37-2-6.1(b)(16).  Likewise, the liabilities, debts, and obligations of CSBs are not attributable

---

[7] Apparently, Plaintiffs' attorney is completely unaware of the hierarchy of federal courts, incorrectly contending that this Court is bound by the opinion of another district court judge. (Doc. 217 at 15-20 & Doc. 237 at 5.)  It is well established and commonly known that the opinion of one district court is not binding on another.  See Fisherman & Tobin, Inc. v. Tropical Shipping & Constr. Co., 240 F.3d 956, 965 (11th Cir. 2001). Judge Edenfield's well-reasoned opinion is of persuasive value, it is not binding.

to municipalities or counties.  O.C.G.A. § 37-2-6(a), O.C.G.A. § 37-2-6.1(b)(16).  Additionally, "[a] community service board does not have the power to . . . financially obligate the state or any county . . . ."  O.C.G.A. § 37-2-6.1(e).  CSBs can sue and be sued in their own names.  O.C.G.A. § 37-2-6.3(b).  When a CSB is sued neither the state, nor any counties, may be held liable for the losses.  O.C.G.A. § 37-2-6.3(c).

The members of the boards are appointed by "the governing authorities of the counties within the community service board area."  O.C.G.A. § 37-2-6(b).  The day-to-day operations of the CSBs are run by the CSBs themselves, which must adopt their own, individual "bylaws, operational policies, and guidelines."  O.C.G.A. § 37-2-6(h).  CSBs are also free to determine conditions for removal of a board member, and voluntary resignations must be reported to the executive director of the CSB—not the state or county.  O.C.G.A. § 37-2-6(m).

CSBs have a number of powers enumerated in O.C.G.A. § 37-2-6.1(b).  The CSB can contract with other state agencies for use of their services.  O.C.G.A. § 37-2-6.1(b)(4).  CSBs "may" cooperate with all units of local government, if they so choose. O.C.G.A. § 37-2-6.1(b)(7) (emphasis added).  Boards can have an individualized seal; establish fees, rates, rents, and charges for use of their facilities; borrow money in their own name; elect chairmen; reimburse employees; accept appropriations and

grants; and establish compensation for employees. O.C.G.A. § 37-2-6.1(b).

Although CSBs begin as state agencies, they have the power to, with the approval of the counties served, "convert to a private nonprofit corporation," "unit of county government," or "component part of a hospital authority." O.C.G.A. § 37-2-6.4(a). If the CSB is failing, it may dissolve through a joint action of the CSB's board and the governing authority of the counties served with ninety days of notice to DHR. O.C.G.A. § 37-2-6.5(a). The DHR will then help the CSB wind down its affairs. O.C.G.A. § 37-2-6.5(b). In the extreme case of failure, with the concurrence of the Commissioner of DHR and the Governor of Georgia, DHR may acquire the assets of the CSB and assume responsibility for its programs. O.C.G.A. § 37-2-6.10.

Conveniently, the governing legislation also explains the contours of a CSB when sued. Venue lies against the CSB where its principle office is located. O.C.G.A. § 37-2-6.11(a). Regional Planning Boards will be assisted by the attorney general when sued; however, CSBs are not entitled to that same assistance. O.C.G.A. § 37-2-6.11(b). The governing legislation defines CSBs, for the purposes of litigation, as follows:

> The community service boards shall be public bodies but shall not be considered agencies of the state or any specific county or municipality. Such community service boards are public agencies in their own right and <u>shall have the same immunity as provided for</u>

counties. No county shall be liable for any action, error, or omission of a community service board. Notwithstanding any provisions of law to the contrary, and regardless of any provisions of law which grant employees of the community service board benefits under programs operated by the state or which deem them to be state employees only for purposes of those benefits, employees of the community service boards shall not be employees of the state but shall be employees of the community service boards and, further, the state shall not be liable for any action, error, or omission of such employees.[8]

O.C.G.A. § 37-2-11.1 (emphasis added). With this background in mind, the Court now considers the four factors.

---

[8] Georgia Courts draw a distinction between state-conferred sovereign immunity and Eleventh Amendment immunity. Hines v. Ga. Ports Auth., 278 Ga. 631, 636, 604 S.E.2d 189, 194 (2004) ("A state court's decision that an organization is an 'agency' of the state for purposes of state-conferred immunity is different from a determination under federal law as to whether an organization is an 'arm of the state' for Eleventh Amendment purposes.") The Georgia Supreme Court has declared this Code section unconstitutional with respect to state-conferred sovereign immunity because the legislature failed to follow the procedures required by the Georgia constitution to abrogate state-conferred sovereign immunity. Youngblood v. Gwinnett Rockdale Newton Cmty. Serv. Bd., 273 Ga. 715, 716-17, 545 S.E.2d 875, 877 (2001). However, Youngblood did not declare the entire scheme unconstitutional or require that CSBs be allowed to share in the state's Eleventh Amendment immunity. See id. (citing only the Georgia State Constitution when discussing immunity), Dep't of Human Res. v. Crews, 278 Ga. App. 56, 59, 628 S.E.2d, 191, 194 (2006) ("[T]he Supreme Court deemed O.C.G.A. § 37-2-11.1(c)(1) unconstitutional to the extent it afforded community service boards . . . the same immunities granted counties. Nothing in Youngblood declares the entire scheme unconstitutional or questions the legislature's authority to create community service boards that are separate and distinct from [the Department of Human Resources]."), Johnson v. Ogeechee Behavioral Health Serv., 479 F. Supp. 2d 1357 (S.D. Ga. 2007).

B.   State Law Definition of the Entity

The first factor in determining whether an entity is an "arm of the state" is how state law defines the entity. Manders, 338 F.3d at 1308. Defendant contends that this factor cuts for immunity because Serenity is a state agency. Plaintiffs respond that this inquiry begins, not ends, with Defendant's designation as a state agency.

Plaintiffs' concession that Serenity is a state agency does not end this inquiry, as Serenity claims. "Being a state agency is the first step toward qualification as an arm of the state, not the last." Johnson, 479 F. Supp. 2d at 1357. As the Supreme Court has explained, the question is "whether a particular state agency has the same independent status as a county or is instead an arm of the state, and therefore 'one of the United States' within the meaning of the Eleventh Amendment." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 n.5 (1997). Moreover, Georgia Courts have held that an entity can be a state agency but not an arm of the state for Eleventh Amendment purposes. Compare Miller v. Ga. Ports Auth., 266 Ga. 586, 589, 470 S.E.2d 426, 428 (1996) (holding that Georgia Ports Authority is a state agency entitled to state sovereign immunity), with Hines, 278 Ga. at 631, 604 S.E.2d at 190 (holding that Georgia Ports Authority is not an arm of the state for the purposes of Eleventh Amendment immunity).

Therefore, Serenity's position that Plaintiffs' admission ends this inquiry is erroneous. As a result, the Court must delve deeper to determine the direction that this factor cuts.

The Georgia legislature plainly intended CSBs to have the same immunities as counties.[9] O.C.G.A. § 37-2-11.1. Counties are not arms of the state and do not have Eleventh Amendment immunity.[10] Hess v. Port Auth. Trans-Hudson Corp., 513 U.S 30, 47 (1994) ("[C]ities and counties do not enjoy Eleventh Amendment immunity."). When the act creating the agency discloses an intent to "create[] an agency comparable to a county or municipality, which has no Eleventh Amendment immunity, the Amendment should not be construed to immunize such

---

[9] As noted above, this Section was held to be unconstitutional with respect to state-conferred sovereign immunity, but not Eleventh Amendment immunity. See supra note 7.

[10] Serenity has not asserted that it was acting as an arm of the state when it terminated Mr. Peery; instead, Serenity contends that as a state agency it is, de facto, entitled to Eleventh Amendment immunity. See N. Ins. Co. of N.Y. v. Chatham County, Ga., 547 U.S. 189, 194 (2006) ("Because the County may claim immunity neither based upon its identity as a county nor under an expansive arm-of-the-State test, the County is subject to suit unless it was acting as an arm of the State."). It is not clear how the Eleventh Amendment precedent is applied to determine when an agency is "acting" as an arm of the state, but it is clear that the definition is fairly narrow and that the agency must be doing something more than exercising a "slice" of state power. Lake Country Estates, Inc. v. Tahoe Reg. Planning Agency, 440 U.S. 391, 400-02 (1979). In this case, it is clear that Serenity was not acting as an arm of the state when it fired Mr. Peery because CSB personnel decisions are entirely removed from state control. See O.C.G.A. § 37-2-6. Only under a highly expansive reading of "acting" as an arm of the state could Serenity qualify, and such an expansive reading is foreclosed by Lake Country. Id.

14

an entity." <u>Lake Country</u>, 440 U.S. at 401. Accordingly, despite the fact that Serenity is a state agency, this factor cuts against a finding of immunity.

C.    <u>Degree of Control the State Maintains Over the Entity</u>

The second factor in the arm of the state inquiry is where the Georgia law vests control of the entity. <u>Manders</u>, 338 F.3d at 1320. Defendant contends that the state has control over Serenity because (1) Serenity must comply with state mandated policies related to personnel administration; (2) the majority of Serenity's employees are subject to state Merit Systems rules and regulations; (3) Serenity's property is public property;[11] and (4) the state can discipline Serenity by terminating its funding. (Doc. 233 at 8-10.) Plaintiffs respond that the state has only contingent control over Serenity, and that, therefore, this factor does not cut strongly in favor of Eleventh Amendment immunity.

---

[11] Serenity puts forth this argument in one sentence that is too vague for intelligent consideration. (Doc. 233 at 9.) Serenity does not specify if by property it is referring to its chattel or real property, or both. Serenity also cites no authority to show that the use of state owned property evinces state control, and <u>Manders</u> is silent on the subject. 338 F.3d at 1320-24. In general, it is wholly possible for a private entity to have use or possession of government property without being controlled by the government. <u>See generally</u> <u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715 (1961) (private restaurant operating on government property). Accordingly, this overly vague and highly generalized argument is unpersuasive and need not be considered further.

In _Manders_, the Eleventh Circuit Court of Appeals held that the state was in control of the entity in question, the state sheriffs. 338 F.3d at 1320. The Eleventh Circuit relied on the facts that many of the sheriffs' specific duties were mandated and controlled by the state and that the state "possesse[d] control over sheriffs' force policy and that control is direct and significant in many areas, including training and discipline." _Id._ Further, the court relied on a lack of control by the county to buttress its conclusion of state control. _Id._ at 1322.

Here, the county has significant control over the policy and decisions made by the board. First, counties appoint board members, an indirect control over each CSB's policies. O.C.G.A. § 37-2-6(b). Second, the counties served can allow the CSB to privatize or join the county government. O.C.G.A. § 37-2-6.4(a). This is especially cogent, because it means the CSB, without state approval, can take itself outside of the state's control. Third, the CSB must get county approval to dissolve. O.C.G.A. § 37-2-6.5(a). The extensive control over CSBs by the county is directly contrary to the lack of county control in _Manders_. 338 F.3d at 1310-11, 1320-22.

Despite significant county controls, the state retains the power to punish CSBs. If a CSB fails to perform adequately under its contractual obligations, the state can step in and

take over the CSB's programs. O.C.G.A. § 37-2-10(b). However, the ability to punish represents the extent of state control. Serenity's claim that its employees are regulated by the state is wholly undermined by the creating statute, which clearly states that CSB employees are not state employees regardless of any state control. O.C.G.A. § 37-2-11.1(c)(1).

In this case, Serenity has not exercised its option to privatize or join the county government. Therefore, both the state and the counties have some control over Serenity—although the counties appear to have more. Due to this joint control, this factor is at best a wash, and provides little guidance as to whether Serenity is an arm of the state.

D.    Source of Funding

The third factor under the Manders analysis is the source of the entity's funding. 338 F.3d at 1323. It is clear that most of Serenity's funding comes from the state. (Doc. 101, Markowski Aff. ¶ 6.) Plaintiffs do not dispute that Serenity is heavily reliant on state funding. (Doc. 217 at 8.) As Serenity is heavily reliant on state funding, this factor cuts towards Eleventh Amendment immunity.

E.    Liability for and Payment of Adverse Judgments

The fourth factor under the Manders analysis is whether the state is liable for a judgment against the entity. 338 F.3d at 1324-25. "[T]he vulnerability of the State's purse [is] the

17

most salient factor in Eleventh Amendment determinations."
Hess, 513 U.S. at 48. However, this inquiry is not a
formalistic question of whether the state will actually pay the
judgment; it is a proxy to determine if the state is the real
party-in-interest. Regents, 519 U.S. at 430-31 ("Respondent
seeks to detach the importance of a State's legal liability for
judgments against a state agency from its moorings as an
indicator of the relationship between the State and its creation
and to convert the inquiry into a formalistic question of
ultimate financial liability. But none of . . . our opinions
lend support to that notion."), Abusaid v. Hillsborough County
Bd. of County Comm'rs, 405 F.3d 1298, 1313 (11th Cir. 2005).
Moreover, while this factor should be weighed heavily, it is not
dispositive. Hess, 513 U.S. at 39.

CSBs are fiscally autonomous and solely liable for any
losses due to suit. The statute specifically states that CSBs
are wholly autonomous when it comes to their debts and
liabilities. O.C.G.A. § 37-2-6(a), O.C.G.A. § 37-2-6.1(b)(16).
In addition, the statute specifically makes CSBs solely liable
in litigation. O.C.G.A. § 37-2-6.3(c) ("The state and counties
in which the community service board operates shall not be
considered a party to or liable under any such litigation.").
There can be no question as to what these provisions show about
CSBs—they are fiscally autonomous. As the Eleventh Circuit has

said, "we have often stressed that the Eleventh Amendment is unlikely to protect an entity with fiscal autonomy." Hufford v. Rodgers, 912 F.2d 1338, 1342 (11th Cir. 1990). Therefore, this factor cuts against immunity.

Serenity's only argument to the contrary is that because the state will indemnify it, pursuant to an insurance agreement, Serenity has Eleventh Amendment immunity. This argument is erroneous. Indemnification by the state does not make the state the real party-in-interest. Jackson v. Ga. Dept. of Transp., 16 F.3d 1573, 1578 (11th Cir. 1994) ("[T]he existence of a voluntarily established liability trust fund does not make the state the real party in interest in this action . . . ."); see, e.g., Sales v. Grant, 224 F.3d 293, 297-98 (4th Cir. 2000) ("Mason and Grant contend that because, under Virginia law, any monetary judgment against them would be paid out of a state-funded insurance plan . . . by a check drawn on the state's general treasury, the suit is barred by the Eleventh Amendment. We disagree."), Benning v. Bd. of Regents of Regency Univ., 928 F.2d 775, 778-79 (7th Cir. 1991) ("[T]he state cannot manufacture immunity for its employees simply by volunteering to indemnify them."), Spruytte v. Walters, 753 F.2d 498, 512 n.6 (6th Cir. 1985), overruled on other grounds by Virgili v. Gilbert, 272 F.3d 391 (6th Cir. 2001) ("A government may not manufacture immunity for its employees by agreeing to indemnify

them."). Beyond this failing, the argument is also insufficient because it is formalistic in the extreme. See Regents, 519 U.S. at 430-31 (1997) (forbidding courts from turning the Eleventh Amendment inquiry into a formalistic question of whether the payment will draw on the state treasury). Further, this argument is weak because it is obvious that the state did not intend CSBs to share its Eleventh Amendment immunity, regardless of the insurance policy. See O.C.G.A. § 37-2-11.1 ("Such community service boards . . . shall have the same immunity as provided for counties."), Lake Country, 440 U.S. at 401 (where the creating statute shows an intent to deny the agency Eleventh Amendment immunity, courts must respect that intent).[12] Serenity's indemnity agreement with the state does not prove that the state is the real party-in-interest to this suit, especially in light of overwhelming statutory language to the

_____

[12] While Serenity does not argue this, it could be contended that a judgment here will have an indirect effect on the state treasury. Like the sheriffs in Manders, Serenity receives much of its funding from the state, and could have argued that the state is functionally liable for a judgment because Serenity would recoup its loss by asking the state for extra money next year. 338 F.3d at 1327-28. However, this argument would fail; the reasoning to this effect in Manders is very limited and may have been overruled. Id. at 1324 n.45 (noting that "we narrowly decide only that Georgia sheriffs in their official capacity act for the state in establishing force policy in the county jail and in training and disciplining their deputies"), Abusaid, 405 F.3d at 1312-13 (rejecting analogous indirect effect argument when advanced by a Florida sheriff instead of a Georgia sheriff noting that Manders was very limited and the indirect effect argument "prove[d] far too much"). Accordingly, the Court finds that any indirect effect argument here would be without merit.

contrary. This factor cuts against granting Serenity Eleventh Amendment immunity.[13]

After careful consideration and balancing of all four factors, this Court finds that Serenity is not an arm of the state entitled to Eleventh Amendment immunity. As stated above, Serenity's Motion is **DENIED**.

### CONCLUSION

For the aforementioned reasons, the Court concludes that the Serenity is not an arm of the state, and, therefore, not entitled to Eleventh Amendment immunity. Accordingly, Serenity's Motion is **DENIED**. The parties will proceed to trial on the claims **as stated in the Complaint**.

SO ORDERED this ___4th___ day of May, 2009.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[13] The Court further notes that even if the insurance policy was relevant this factor would be, at best, a wash due to clearly contrary statutory intent.